UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
MAY 7 2019

| | |
|---|---|
| BASF PLANT SCIENCE, LP,   )<br>  )<br>Plaintiff,   )<br>  )<br>v.   )<br>  )<br>COMMONWEALTH SCIENTIFIC AND   )<br>INDUSTRIAL RESEARCH ORGANIZATION,   )<br>GRANIS RESEARCH AND DEVELOPMENT   )<br>CORPORATION, AND NUSEED PTY LTD,   )<br>  )<br>Defendants.   )<br>_____)<br>COMMONWEALTH SCIENTIFIC AND   )<br>INDUSTRIAL RESEARCH ORGANISATION,   )<br>GRAINS RESEARCH AND DEVELOPMENT CORP.,   )<br>AND NUSEED PTY LTD.,   )<br>  )<br>Plaintiffs- Counterclaimants   )<br>  )<br>v.   )<br>  )<br>BASF PLANT SCIENCE, LP,   )<br>AND CARGILL, INC.,   )<br>  )<br>Defendants- Counterdefendants   ) | C.A. No. 2:17-cv-503 |

## OPINION & ORDER

These matters come to the Court on two (2) motions to dismiss, one filed by Defendant-Counterclaimant Cargill, doc. 101, and one filed by Defendants-Counterclaimants Commonwealth Scientific and Industrial Research Organization ("CSIRO"), doc. 177; and a motion to compel, doc. 108, filed by CSIRO. On April 10, 2019, this Court heard arguments on these motions as well as arguments on the parties proposed constructions of several disputed terms. This Court **DENIED** both motions to dismiss and **GRANTED** the motion to compel **IN PART** and **DENIED**

1

it **IN PART** from the bench. This Opinion and Order is issued to further explain the reasons stated on the bench.

## I. BACKGROUND

This patent infringement and contract action is the latest in a series of intellectual property and other legal battles across the globe between the parties. See Am. Compl. ¶¶ 24-25. This case is about United States patents on plants which formulate certain "long chain" fatty acids.

BASF Plant Science is incorporated in Delaware with its principal place of business in New Jersey. Doc. 43 ¶ 1. Cargill is a corporation incorporated in Delaware with its principal place of business in Minnesota. Doc. 101-1. ¶ 3. Cargill maintains large distribution networks and has some business in Virginia. See id. ¶¶ 9-10.

Commonwealth Scientific and Industrial Research Organization ("CSIRO") is an Australian entity created by the Australian government with its principal place of business in the Australian Capital Territory ("ATC"). The Grains Research and Development Corporation is also an Australian entity with its principal place of business in ATC. Nuseed Pty. Ltd. has its principal place of business in Victoria, Australia.

BASF Plant Science, LP (collectively with counterclaim-defendant, BASF Plant Science GMBH, "BASF") is a self-described "pioneer" in developing plant-based biotechnology. Am. Compl. ¶ 15. Since 1998, BASF has attempted to create a plant which can make long chain omega-3 polyunsaturated fatty acids ("LC-PUFA"), docosahexaenoic acid ("DHA") and eicosapentaenoic acid ("EPA").[1] Id. In 2011, BASF and Cargill entered into an agreement to commercialize a canola oil product that would contain such fatty acids. Id. ¶¶ 16-18. BASF agreed to develop the seeds and obtain regulatory approval, and Cargill agreed to cultivate, process,

---

[1] DHA and EPA are types of omega-3 fatty acids, helpful to human health.

2

extract, and commercialize the oil product. Id. ¶ 17. Cargill and BASF planned to grow and cultivate their seeds across the United States, but not in Virginia. Doc. 101-1 ¶ 8; doc. 102 at 11. At the hearing, counsel asserted that the agreement states that the cooperative between the two (2) entities is not a partnership, notwithstanding their cooperation for mutual benefit and profit. In November of 2017, BASF petitioned the United States Department of Agriculture for deregulation of canola seeds rich in the fatty acids. Am. Compl. ¶ 21. Approval is expected this year. Id.

On March 1, 2008, Commonwealth Scientific and Industrial Research Organization ("CSIRO") and BASF entered into a Materials Transfer and Evaluation Agreement. ("MTEA"). Doc. 165-1 ("MTEA"). Under the MTEA, the parties wished to collaborate and jointly evaluate each other's genetic data on EPA and DHA producing plants. MTEA Recitals at B. The MTEA speaks to how the parties will share information and how they will respectively own resulting intellectual property. Id. ¶¶ 4-6. The MTEA was governed "by the law in force in The Australian Capital Territory" and the parties thereto agreed to "submit to the exclusive jurisdiction of the courts of the Australian Capital Territory." Id. ¶ 14.1. That agreement was to last for two (2) years. Id. ¶ 2.1. According to its "survival clause" clauses 1, 6, 8, 9, 9, 10, 11.3, and 12 survived termination; the choice of law and forum provision was not on that list. Id. ¶ 11.4(a).

BASF deposited samples of the seeds that it and Cargill had developed with the American Type Culture Collection ("ATCC") in Manassas, Virginia as a part of its patent requirements. Doc. 43 ¶ 19. On March 22, 2017, BASF learned that Nuseed had requested samples of its seeds from ATCC. Id. ¶ 35.

In 2016, after BASF and CSIRO had discussed cross-licensing their similar patents, BASF and Nuseed Pty. Ltd. ("Nuseed") began discussing United States licenses. Id. ¶ 25. Evidently, Nuseed demanded high net payments, which BASF thought was unacceptable. Id. ¶ 33. BASF

3

believed there to be a "clear and immediate" threat of litigation, so it filed suit on April 13, 2017 in the District of Delaware. Id. ¶¶ 37-38. That court held that Nuseed would have lacked standing to sue on the patents and dismissed the complaint without prejudice to filing in a forum that could exercise jurisdiction over CSIRO. Id. ¶ 38.

The procedural history of this case is summarized in this Court's Claim Construction Order. In the interest of brevity, this Court will not repeat that summary.

## II. MOTIONS TO DISMISS

The Court heard arguments on two (2) motions to dismiss: the first filed by Cargill to dismiss it from the case for lack of personal jurisdiction and improper venue, doc. 101, and the second filed by CSIRO to have certain counterclaims and defenses dismissed under the common law doctrine of <u>forum</u> <u>non</u> <u>conveniens</u> in favor of an Australian forum, doc. 177. For reasons stated at the hearing and in this Opinion and Order, both motions are **DENIED**.

### A. CARGILL'S MOTION TO DISMISS

Cargill moved under rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure to dismiss it from the case, arguing that this Court lacks personal jurisdiction over it and this Court is an improper venue. Doc. 101.

*i. Personal Jurisdiction*

*(1) Legal Standard*

When resolving a motion to dismiss under Rule 12(b)(2), courts should conduct a two-step process: first, a court must determine whether the long-arm statute of the state in which it sits would authorize service of process of the Defendant, and second, whether the assertion of personal jurisdiction violates due process. Genetic Implant Systems, Inc. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997).

In Virginia, the long-arm statute has been read to generally permit jurisdiction as far as the Due Process Clause will permit. Prototype Prods., Inc. v. Reset, Inc., F. Supp. 2d 691, 700 (E.D. Va. 2012); see also Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403, 1411 (Fed. Cir. 2009) (observing that "satisfaction of Virginia's requirements for service of process is satisfied when due process is satisfied"). Accordingly, the analysis here revolves solely around the second prong of the personal jurisdiction analysis.

A court's exercise of jurisdiction over the parties before it must comply with the requirements of the federal Constitution, specifically the Due Process Clause. Int'l Shoe v. Washington, 326 U.S. 310, 316 (1945). As the Supreme Court declared, "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id. "But the foreseeability that is critical to due process analysis is . . . that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Whether personal jurisdiction is properly exercised over a foreign defendant entails weighing three (3) factors: (1) whether the defendant purposefully directed activities to residents of the forum, (2) whether the claim arise out of or relates to the defendant's activities with the forum, and (3) whether assertion of personal jurisdiction is reasonable and fair. Kilink, Inc. v. Papst Licensing GmbH & Co. KG, 848 F.3d 1346, 1353 (Fed. Cir. 2017). Activities conducted outside the forum may sufficiently tie a defendant to the forum if the activities constitute a purposeful availment of the forum and its laws. Am. GNC Corp. v. GoPro, Inc., 2018 WL 6074395, at *11 (S.D. Cal. November 6, 2018) ("Federal Circuit precedent shows that such

indirect, yet purposeful contacts with the forum provide a basis for the exercise of personal jurisdiction."). Moreover, contacts of a third party can be imputed onto another party for purposes of personal jurisdiction. Celgard, LLC v. SK Innovation Co., 792 F.3d 1373, 1379 (Fed. Cir. 2015); see also ANN. PATENT DIGEST (Matthews) § 36:80 ("Generally, the acts of an agent acting within in the scope of its agency, and the resulting contacts there from, are imputable to the principal for determining specific personal jurisdiction of the principal."); Daimler AG v. Bauman, 571 U.S. 117, 135 n.13 (2014) ("[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there.").

*(2) Discussion*

CSIRO argues that this Court may exercise general jurisdiction over Cargill, because of Cargill's "robust and systematic contacts" with Virginia. Doc. 107 at 24. CSIRO argues that these contacts include Cargill's 1,800 employees in Virginia, its business locations is seven (7) Virginia cities, its land ownership in Virginia, and creates a large quantity of product here in Virginia. Id. It also argues that the fact that Cargill has registered to business in Virginia provides a "separate and independent" basis for general jurisdiction. Id. at 25. Moreover, CSIO argues that conduct that BASF performed on behalf of Cargill and with Cargill's permission, such as the ATCC deposit, is attributable to Cargill for purposes of personal jurisdiction. Doc. 107 at 16-17.

Cargill argues that this Court lacks general jurisdiction over it, because it is not "essentially at home" in Virginia and that there are no exceptional circumstances which would otherwise justify exercising jurisdiction. Doc. 102 at 16-17. Cargill argues that it is a Delaware corporation with its principal place of business in Minnesota. Id. at 16. Responding to CSIRO's argument that business registration provides general jurisdiction, Cargill argues that such an interpretation has been rejected by many courts and defies common sense. Doc. 114 at 13.

The Court is persuaded by CSIRO's argument. It is difficult to imagine how Cargill could not anticipate being haled into this Court for this dispute. To begin, Cargill has an extensive presence in this Commonwealth. It employs 1,800 employees, owns land in Virginia, it is registered to do business here, and maintains business locations throughout the Commonwealth. Accordingly, the Court is of the opinion that Cargill has purposefully availed itself of Virginia; its laws; and, consequently, its jurisdiction.

Moreover, the Court believes that the agreement between BASF and Cargill amounts to a partnership, notwithstanding what it may say.[2] Both parties entered into an agreement to commercialize the deposited seeds for their own mutual economic benefit. Furthermore, the parties divided the work necessary to accomplish those ends. Thus, when BASF deposited the seeds with the ATCC in this District and filed suit in this District, it brought matters central to that partnership into this Court's jurisdiction. Cargill does not dispute that this was done pursuant to, in fact critical to, the goals of its agreement with BASF. Cargill and BASF are working together to commercialize their potentially infringing product, and in doing so took action in this District. Indeed, Cargill and BASF are in "lock step" in their business strategy. Doc. 43. ¶ 32. Therefore, it is hard for Cargill to maintain that it could not "reasonably anticipate being haled into [this] court" or that it lacks "minimum contacts" with this forum. Woodson, 444 U.S. at 297.

Given these contacts, it seems clear that Cargill has intentionally directed a wide breadth of substantial activity to this forum, and that the claim "relates to" Cargill's activities in the forum. Xilinx, 848 F.3d at 1353. Cargill and BASF are attempting to monetize these seeds and, in doing

---

[2] At the hearing on these matters, counsel for Cargill argued that the BASF-Cargill cooperation did not amount to a partnership and cited a clause in their contract to that effect. It is widely understood and accepted that partnerships can be formed regardless of contract clauses to the contrary. E.g., Va. Code. Ann. § 50-73.88(A); AM. JUR. PARTNERSHIP § 131 (highlighting that a partnership test is one of balancing factors, which no single one being dispositive). The Court is also aware of BASF's prior representations to this Court. E.g., Doc. 46-2 at 22:19-21 ("THE COURT: So Cargill would process the seeds [which are produced by BASF] to produce the oil. Is that what you're saying? MS. CHOW [counsel for BASF]: But under a partnership with us . . . .") (emphasis added).

so, have taken action in this District. BASF, acting on behalf of itself and Cargill, has taken action in this District, including filing this lawsuit in this Court. Therefore, the Court is persuaded that the action relates purposeful activities in this forum by Cargill and BASF in pursuit of their mutual benefit.

Furthermore, the Court believes that exercising jurisdiction over Cargill is reasonable and fair, given its extensive contacts and activities in this forum. The fact that litigation has been ongoing in this Court for nearly two (2) years that implicate the Cargill-BASF partnership and their activities in this forum support a finding that exercising jurisdiction here is both reasonable and fair.

Accordingly, the motion to dismiss for lack of personal jurisdiction is **DENIED**.

*ii. Venue*

Cargill alternatively moves this Court to dismiss the action because the Eastern District of Virginia is an improper venue.

Patent venue for domestic corporations is exclusively governed by 28 U.S.C. § 1400(b). TC Heartland LLC v. Kraft Foods Grp., 137 S.Ct. 1514, 1519 (2017). That statute states:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

28 U.S.C. § 1400(b). For the purpose of this statute, a domestic corporation "only resides in its State of Incorporation." TC Heartland, 137 S. Ct. at 1517. The Federal Circuit has not decided whether a defendant's "acts of infringement" need to be related to its "regular and established place of business" to satisfy the second prong of the venue statute.

Cargill argues that venue in the Eastern District of Virginia is improper, because (1) it does not reside in this District and (2) it has not committed any acts of infringement in this District.

Doc. 102 at 27-29. Cargill argues that it is incorporated in Delaware; thus, under this statute it does not reside in Virginia. Id. at 28. Cargill goes on to argue that it does not cultivate, plant, grow, harvest, sell, or offer to sell the allegedly infringing seeds in Virginia. Id. at 30. Cargill further argues that its collaboration with BASF did not take place in Virginia or contemplate action in Virginia. Id. Cargill also argues that CSIRO's argument that Cargill intends to infringe in Virginia cannot support venue in this District given the language of the statute. Id. at 31 (section 1400(b) says "has committed acts of infringement" in past tense). Finally, Cargill argues that the deposit of the seeds (1) is not an act of infringement and (2) Cargill did not commit that act. Id. Accordingly, Cargill argues that this District is an improper venue.

CSIRO argues that Cargill maintains regular business in Virginia and that it has committed an act of infringement in this District. Doc. 107 at 26. CSIRO repeats its arguments that by "induc[ing]" BASF to deposit the seeds and that such a deposit is an act of infringement, venue is proper as to Cargill. Id. CSIRO also argues that Cargill's plans to market the seeds in Virginia and BASF's filing suit here grant venue over Cargill. Id. at 27-28.

As discussed above, Cargill is incorporated in Delaware; accordingly, the first clause of section 1400(b) cannot support venue. Thus, venue can only be supported if Cargill "has committed acts of infringement and has a regular and established place of business." § 1400(b). CSIRO relies on BASF's deposit of seeds to the ATCC as an "act of infringement" and the BASF-Cargill relationship to establish venue over Cargill.

The Court **FINDS** that venue is proper under the second clause on section 1400(b). First, the Court does not believe that a nexus between the acts of infringement and the regular and established place of business is required by the statute. The rationale of other courts on this point is persuasive. E.g., Seven Neworks, LLC v. Google, 315 F. Supp. 3d 933 (E.D. Tex. 2018);

Bristol-Meyers Squibb Co. v. Mylan Pharm., 2017 WL 3980155 (D. Del. 2011); Plexxikon Inc. v. Novartis Pharm. Corp., 2017 WL 6289674 (N.D. Cal 2011). First, the more recent cases do not hold that such a connection is required. See Id. Second, the language of the statute does not require a connection. See § 1400(b) ("the defendant has committed acts of infringement and has a regular and established place of business"). Under the plain language of the statute, if a defendant commits an act of infringement and has a regular and established place of business in the forum, venue is proper. This is consistent with the principles of venue – that the venue trying the case be a convenient location.

Because Cargill maintains a regular and established business in Virginia, supra, the question becomes whether depositing the seeds with the ATCC is an "act of infringement." The Court is persuaded that, for the purposes of this motion only, CSIRO has demonstrated BASF and Cargill committed an act of infringement by depositing the seeds in this District. "Acts of infringement" under the statute has the same meaning as the acts discussed in 35 U.S.C. § 271(a). Seven Networks, LLC, 315 F. Supp. 3d at 942 (collecting authorities). Section 271(a) states that infringement includes "use," "sell[]," and "offer to sell." 35 U.S.C. § 271(a). The BASF-Cargill seeds may well infringe on CSIRO's patents. If so, depositing those seeds as a necessary means to monetize such seeds would appear to at least be "use." Even though BASF deposited the seeds, such action is attributable to Cargill given the partnership and close connection of the entities. Supra at II.A.i.; see also Minnesota Min. & Mfg. Co. v. Eco Chem, Inc., 757 F.2d 1256, 1265 (Fed. Cir. 1985) ("[V]enue in a patent infringement case was proper with regard to one corporation by virtue of the acts of another, intimately connected, corporation."); Master Tech Prod., Inc. v. Smith, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002). Thus, this Court is the appropriate venue to resolve this case.

B.  **CSIRO'S MOTION TO DISMISS**

CSIRO moved under the common law doctrine of forum non conveniens to dismiss certain counterclaims and affirmative defenses stemming from the MTEA. Doc. 177. Specifically, CSIRO argues that the Court should dismiss claims XXIX, XXX, XXXI, and the Thirty-Eighth, Thirty-Ninth, and Fortieth affirmative defenses. Under Claim XXIX and the Thirty-Ninth defense, BASF argues that it is a part owner of CSIRO's asserted patents. Doc. 165 at 45-46, 85. Under the Thirty-Eighth defense, BASF argues that CSIRO acted with unclean hands. Id. at 46. Under the Fortieth Defense, BASF argues that CSIRO lacks standing to assert the patents, because it is not a complete owner. Under claim XXX, BASF asks for declaratory judgment of partial inventorship of the patents. Id. at 86. Under claim XXXI, BASF asks for declaratory judgment of unenforceability. Id. at 88.

*i. Legal Standard*

When a forum selection clause calls for litigation in a foreign, i.e., a non-United States forum, the common law doctrine of forum non conveniens applies. Atl. Marine Const. Co. v. U.S. Dist. Ct. for W.D. of Tex., 571 U.S. 49, 60 (2013). The Atlantic Marine Court noted that the traditional forum non conveniens analysis[3] is altered in three (3) ways given the presence of a forum selection clause. Id. at 63. In such a case, Plaintiff's selection of a forum merits no deference, private interests are not considered, and the court should not apply the transferring court's choice of law rules. Id. at 63-64. This, of course, assumes that the choice of forum clause governs. Id. at 62 n.5 ("Our analysis presupposes a contractually valid forum-selection clause."). Public interest can still outweigh the forum articulated in the contract. Id. at 64.

---

[3] A traditional analysis is very similar to the transfer of venue analysis under 28 U.S.C. § 1404. A traditional forum non conveniens analysis acknowledges deference to the plaintiff's selected forum, then proceeds to balance private and public interest factors to determine which is the most appropriate forum.

It is well accepted that parties to a contract may bargain-for and select a preferred forum for resolving any disputes arising under the contract. When drafting contracts, parties may also identify a termination date for the contract. Generally, contract clauses which are procedural in nature and outline how disputes are to be resolved will survive contract termination. Whether a forum selection clause is such a clause which survives contract termination is disputed, and courts are split. Compare TSI USA, LLC v. Uber Techs., Inc, 2017 WL 106835 (N.D. Tex. Jan. 11, 2015) (finding that a forum selection clause does not survive contract termination when the contract enumerates clauses surviving its termination and omits the selection clause), with Aamco Transmissions, Inc. v. Romano, 42 F. Supp. 3d 700 (E.D. Penn. 2014) (finding that a forum selection clause does survive, even if it is not a listed surviving clause). No case directly governing this Court's resolution of this issue has been called to its attention.

*ii. Discussion*

CSIRO asks this Court to enforce the forum selection clause. CSIRO argues that even though the forum selection clause is not listed in the provisions which survive the agreement, procedural clauses, including forum selection clauses survive termination of the agreement under both United States and Australian law. Doc. 195 at 3-5 (collecting United States and Australian authority). CSIRO argues that Australian law governs and would hold that the relevant provisions survive. Doc. 195 at 3 (citing e.g., Richmond v. Moor Stephens Adelaide Pty. Ltd [2015] SASCFC 147 at 39, ¶ 199 ("These types of obligations[, those which survive termination,] include those relating to dispute resolution procedures, choice of law, exclusion of liability and agreed damages.")). CSIRO argues that United States law leads to the same result. Id. at 4.

BASF cites the language of the contract itself. BASF argues that the "survival clause" lists all clauses which will survive termination, and that the choice of law and forum clauses are not on

that list. Doc. 187 at 8. BASF cites <u>TSI USA, LLC v. Uber Techs., Inc</u>, 2017 WL 106835 (N.D. Tex. Jan. 11, 2015). Doc. 187 at 8. In that case, the court applied California law to determine whether a forum selection clause survived the agreement. 2017 WL 106835 at *5. The court held that a plain reading of the survival clause held that the choice of forum clause was not listed in the list of clauses which survived. <u>Id.</u> BASF attempts to distinguish case law to the contrary by arguing that those courts interpreted choice of law clauses, which were not listed in the survival clauses, which stated that they covered "any" dispute. Doc. 187 at 10 (distinguishing e.g., <u>Aamco Transmissions, Inc. v. Romano</u>, 42 F. Supp. 3d 700 (E.D. Penn. 2014).

The Court **FINDS** that the choice of forum clause here has not survived the contract's termination. First of all, the Court finds it difficult to accept the proposition that legal professionals negotiating what clauses would survive a contract's termination would go through the work of analyzing the contract for terms that they intended to survive and omit the choice of forum clause, unless they did not intend that it survive. Moreover, common contract interpretation supports the Court's finding. As the Northern District of Texas observed, on a substantially similar issue, "[a]s the maxim '<u>expressio unius est exclusio alterius</u>' provides, the 'mention of one matter implies the exclusion of all others.' <u>TSI USA, LLC v. Uber Techs., Inc</u>, 2017 WL 106835, at *6 (N.D. Tex. Jan. 11, 2015) (internal citations omitted). While some courts have held that a forum selection clause survives termination of an agreement, this Court **FINDS** that the plain language of the survival clause compels a finding that the intent of the parties as expressed in the contract indicates that the choice of forum clause did not survive termination of the agreement.

Thus, the Court should apply the traditional <u>forum non conveniens</u> analysis. First, the Court begins by according BASF's choice of forum deference. Moving on to the private interest factors, the parties are already locked in litigation in this Court on the same patents. It would seem

duplicative and wasteful to require litigation on two (2) continents over the same patents. Indeed, as to both of these factors, the Court notes that BASF raised these counterclaims in response to claims brought by CSIRO, which were brought due to this litigation.

Moreover, this Court **FINDS** that the public interest weighs heavily in keeping these matters before the Eastern District of Virginia. "The purpose or result of enforcing a forum selection clause should not be to multiply litigation and increase the costs of litigation between the parties." In Re: Bavaria Yachts, 575 B.R. 540, 563 (N.D. Ga. Br. Ct. 2017); see also Ashley Furniture Indus., Inc. v. Packaging Corp. of America, 275 F. Supp. 3d 957, 963, 965- 966 (W.D. Wis. July 28, 2017) ("... the Supreme Court left important questions unanswered, including "[i]f the [forum selection] clause applies to only some parties or claims but not others, how should the court review a transfer motion?"); Axis Oilfield Rentals, LLC v. Mining, Rock, Excavation & Const., LLC, 2015 WL 5774801, *6 (E.D. La. Sept. 30, 2015) ("[A] court should not sever [claims] if ... partial transfer would require the same issue to be litigated in two cases."). If this Court dismissed these claims in favor of an Australian forum, discovery would be duplicated, trial costs could be spent twice, court staff would spend time and resources twice adjudicating substantially similar matters. As the Bavaria Yachts court noted, Atlantic Marine has traditionally been limited to its facts, particularly that all of the claims arise under the clause at issue. Bavaria Yachts, 575 B.R. at 563. Further, much like the strong bankruptcy interests discussed in Bavaria Yachts, this case concerns the ownership and inventorship of United States patents. Thus, the United States has a strong interest in adjudicating this controversy. Further, if this Court dismissed these matters, the parties could be subject to inconsistent judgments and interlocutory orders with respect to how the litigation proceeds. Therefore, not only do the parties have an interest in litigating this matter

altogether, the courts likewise have a strong interest to maintain the prompt and orderly disposition of this matter. Therefore, CSIRO's motion is **DENIED**.

Even if the choice of forum clause survived, and the Court would be required to apply the Atlantic Marine forum non conveniens framework, the Court is still not convinced that it must dismiss these claims. As the Atlantic Marine Court noted, public interest may call for refusing to honor the choice of forum clause. Even though such cases may be rare, the Court did not foreclose the possibility that public interest could be so compelling as to warrant retaining jurisdiction. Partial dismissal of this case would cause an extraordinary waste of time and surrender this forum's interest in adjudicating the ownership and inventorship of United States patents. Accordingly, the Court **FINDS** that such public interests would outweigh the pull of the clause. Therefore, CSIRO's motion will be **DENIED** even if this Court applies to apply the forum selection clause.

### III. MOTION TO COMPEL

CSIRO argues that it is entitled to discovery of several categories of documents that BASF and Cargill have apparently refused to disclose. Doc. 108. Specifically, CSIRO argues that this Court should compel BASF and Cargill to disclose:

(1) The agreement(s) between BASF and Cargill related to their work EPA+DHA canola, and documents reflecting the location of the negotiations of those agreements and personnel involved. See Declaration of Daniel Zaheer ("Zaheer Dec.") Ex. 2 at RFP No. 7; Ex. 3 at RFP No. 7.

(2) Documents relating to the depositing of Cargill and BASF's EPA+DHA canola seeds at the American Type Culture Collection ("ATCC") in Manassas, Virginia. See Zaheer Dec. Ex. 2 at RFP No. 10, Ex. 3 at RFP No. 10.

(3) Documents reflecting Cargill's anticipated or contemplated supply and distribution chain for products derived from EPA+DHA canola, including documents reflecting the locations of anticipated commercial growing; seed processing and extraction facilities; warehouses and other storage facilities; oil production, bottling and packaging facilities; places of export and/or import of related products; business, marketing and other offices related to the products; and the identity and location of potential customers. See Zaheer Dec. Ex. 2 at RFP Nos. 4-8, 14-15; Ex. 3 at RFP Nos. 1-5, 14-15.

(4) Documents reflecting the personnel who have worked on EPA+DHA canola and personnel who are expected to work on the commercial production and sale of related products. See Zaheer Dec. Ex. 2 at RFP Nos. 4-8, 14-15; Ex. 3 at RFP Nos. 1-5, 14- 15.

(5) Documents concerning the conferences, seminars, exhibitions, etc., in which Cargill or BASF marketed, displayed, demonstrated or otherwise exhibited products related to EPA+DHA canola. See Zaheer Dec. Ex. 2 at RFP No. 4; Ex. 3 at RFP No. 6.

(6) Documents reflecting past and future activities related to EPA+DHA canola, in or relating to the Commonwealth of Virginia. See Zaheer Dec. Ex. 2 at RFP No. 15; Ex. 3 at RFP No. 15.

Apparently, Cargill disclosed the BASF-Cargill contract to CSIRO shortly before this motion (and the motions to dismiss) were filed. Doc. 107 at 6 n.2. Moreover, Cargill has stated that it is collecting responsive documents, but seems to object to their immediate disclosure. Doc. 119 at 6 ("This dispute is not about whether the Counterclaim Plaintiffs will get Cargill's documents. They will. . . . [T]his dispute is about whether [CSIRO] need[s] certain documents immediately. . . .").

## A. LEGAL STANDARD

Parties to a lawsuit are entitled to discover any nonprivileged information relevant to a claim or defense, provided such disclosure is proportional to the needs of the case. Fed. R. Civ. P. 26(b). "The Federal Rules contemplate the broadest discovery possible in the search of the truth." Doe v. Old Dominion Univ., 289 F. Supp. 3d 744, 749 (E.D. Va. 2018). On a motion to compel discovery, the burden is on the party objecting to the discovery to establish that the production need not be made. Id. Trial courts have broad discretion when acting on a motion to compel. Wu v. Tseng, 2007 WL4143077 (E.D. Va. 2007).

## B. DISCUSSION

### i. Information Pertaining to BASF-Cargill Agreements

As to information category (1) – BASF-Cargill agreements – CSIRO argues that this information is directly relevant to Cargill's personal jurisdiction defense. Doc. 109 at 11. The documents also appear to be relevant to the underlying patent claims themselves.

Cargill argues that it has already disclosed the agreement, which only leaves documents referring to the location of negotiations and personnel involved. Doc. 119 at 14. Cargill goes on to argue that it has already disclosed that there are no documents which show that there is any relevant contact between Cargill and Virginia. Id.

BASF argues that the contract has already been disclosed and that any information about BASF personnel is irrelevant to Cargill's motion. Doc. 121 at 6. BASF argues that to the extent that they are relevant, the documents should be sought from Cargill. Id.

Cargill has certified that there are no documents which indicate that the agreement was negotiated in Virginia and that no Cargill personnel live or work in Virginia. However, information pertaining to the negotiation of the contract may could be relevant to the underlying

patent claims and is nonprivileged. Accordingly, the Court **GRANTS** CSIRO's motion to disclose these documents.

## ii. Information Pertaining to Depositing the Seeds to the ATCC

CSIRO repeats its allegation that depositing these seeds to the ATCC are an act of infringement. Doc. 109 at 11. CSIRO argues that it expects documents will "further support [its] contention that this was an infringing use." Id. CSIRO does not allege that Cargill may have deposited the seeds, but again asserts that BASF deposited the seeds on behalf of the BASF-Cargill partnership. Id.

Cargill argues that this requests documents which do not exist, because it never deposited the seeds or directed anyone to deposit the seeds. Doc. 119 at 16. BASF seems to support this argument, that Cargill never deposited the seeds and had no involvement in their deposit. Doc. 121 at 7.

The documents sought are relevant as they pertain to BASF's allegedly infringing seeds. BASF itself conceded that the deposit was required by the application for their patents. Am. Compl. ¶ 19. BASF and Cargill focus on Cargill's involvement in their resistance to the discovery requests. However, the discovery request was also directed at BASF. See Doc. 107 Ex. A at 68. The fact that this discovery dispute is primarily related to Cargill and CSIRO does not excuse BASF from its discovery obligations. Accordingly, the Court **GRANTS** this motion to the extent that any documents exist, regardless of who deposited the seeds or at whom the requests were directed. Of course, this Order would also cover any non-privileged communications relating to the seed deposit. Further this Order would not require duplicative discovery (i.e., documents produced by BASF need not be produced by Cargill).

### iii. Information Pertaining to Cargill's Anticipated Distribution of the Product

CSIRO repeats its argument that personal jurisdiction and venue in this case can be established by Cargill's mere plans to market the product in Virginia. Doc. 109 at 11-12.

Cargill similarly repeats its arguments that Federal Circuit law permitting such jurisdiction is limited to Hatch-Waxman cases. Doc. 119 at 18. Cargill argues that any actions it may take in the future are accordingly irrelevant to this Court's jurisdiction today. Id. at 19. BASF echoes these arguments and adds that even if those documents are discoverable, they should be sought from Cargill, not BASF. Doc. 121 at 7-8.

The parties seem to be aware that Cargill's role in the partnership is to commercialize the seeds, disclosure of Cargill's plans and distribution networks does not seem to add much to this case. CSIRO's product and the Cargill-BASF product will be competitive with each other, and the Court is hesitant to require disclosure of sensitive business information to business rivals absent a need to do so. Because, the Court does not think an adequate need has been shown, the Court will not require such disclosure. Accordingly, the Court **DENIES** discovery into this information. If circumstances arise that would make this information relevant, the parties are free to ask this Court to re-visit this matter.

### iv. Information Pertaining to Personnel Who Worked on the Seeds, Conferences at Which Cargill or BASF Exhibited the Seeds, and Past and Future Activities Relating to the Seeds and Virginia

CSIRO collapses categories (4)-(6) together. Doc. 109 at 12. CSIRO merely states that this information is directed at jurisdictionally relevant contacts. Id. There is not much explanation as to whether CSIRO has reason to believe these documents exist or their likelihood of revealing Virginia contacts. See id.

Cargill argues that these categories of information amount to a fishing expedition. Doc. 119 at 19. Cargill argues that the documents either do not exist or do not pertain to contacts with Virginia. Id.

BASF argues that this request amounts to a fishing expedition. Doc. 121 at 8. BASF also argues that CSIRO has not established a basis as to why documents it hold may be relevant to Cargill's motion. Id.

In a similar fashion as the other issues, these documents seem to be relevant to the underlying patent claims. To the extent BASF and Cargill argue otherwise, the Court **GRANTS** the motion to compel to the extent it requests non-privileged information.

Accordingly, the Court **GRANTS** the motion to compel **IN PART** and **DENIES** it **IN PART** consistent with this Opinion and Order and the reasons and Orders discussed on the bench.

The Clerk is **REQUESTED** to distribute a copy of this Opinion and Order to counsel of record.

It is **SO ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

Norfolk, Virginia
May 7, 2019

HENRY COKE MORGAN, JR.
SENIOR UNTIED STATES DISTRICT JUDGE