**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| BASF PLANT SCIENCE, LP, | |
| Plaintiff, | Civil Action No. 2:17cv503-HCM-LRL |
| v. | Patent Case |
| COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION, | |
| Defendant. | |
| COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION, GRAINS RESEARCH AND DEVELOPMENT CORP., AND NUSEED PTY LTD., | |
| Plaintiffs-Counterclaimants, | |
| v. | |
| BASF PLANT SCIENCE, LP, and CARGILL, INC., | |
| Defendants-Counterdefendants. | |

**BASF/CARGILL'S PROPOSED FINAL JURY INSTRUCTIONS**

BASF Plant Science, LP's and BASF Plant Science GmbH (collectively "BASF") and Cargill, Incorporated ("Cargill") (collectively, BASF and Cargill are "BASF/Cargill") hereby propose the final jury instructions set forth below.  BASF/Cargill reserve the right to submit additional or modified proposed jury instructions, depending upon the issues to be submitted to the jury or decided by the Court in whole or in part. BASF/Cargill's submission of an instruction on

1

any particular point should not be construed as an express or implicit admission that Counterclaimants will present sufficient evidence to submit any such issue to the jury at the close of all evidence.  BASF/Cargill reserve the right to move, under Federal Rule of Civil Procedure 50, for judgment in their favor as a matter of law on any and all issues that would otherwise be submitted for determination by a jury and to modify these proposed instructions accordingly.

## TABLE OF CONTENTS

INSTRUCTION NO. 1 – INTRODUCTION ............................................................................ 4

INSTRUCTION NO. 2 – BURDENS OF PROOF – PREPONDERANCE OF THE EVIDENCE ........... 5

INSTRUCTION NO. 3 – BURDENS OF PROOF – CLEAR AND CONVICNING EVIDENCE ........... 6

INSTRUCTION NO. 4 – TYPES OF EVIDENCE .................................................................... 7

INSTRUCTION NO. 5 – CONSIDERATION OF EVIDENCE ..................................................... 8

INSTRUCTION NO. 6 – WITNESSES .................................................................................. 9

INSTRUCTION NO. 7 – WITNESS CREDIBILITTY .............................................................. 10

INSTRUCTION NO. 8 – WITNESS IMPEACHMENT ............................................................ 11

INSTRUCTION NO. 9 – DEPOSITION TESTIMONY ............................................................ 12

INSTRUCTION NO. 10 – CHARTS AND SUMMARIES ........................................................ 13

INSTRUCTION NO. 11 – EXPERT OPINION TESTIMONY .................................................... 14

INSTRUCTION NO. 12 – DEPENDENT CLAIMS ................................................................ 15

INSTRUCTION NO. 13 – CLAIM CONSTRUCTION ............................................................. 16

INSTRUCTION NO. 14 – CLAIM CONSTRUCTION - THIS CASE .......................................... 18

INSTRUCTION NO. 15 – INFRINGEMENT GENERALLY ...................................................... 19

INSTRUCTION NO. 16 – DIRECT AND LITERAL INFRINGEMENT ........................................ 20

INSTRUCTION NO. 17 – DIRECT INFRINGEMENT – INFRINGEMENT UNDER THE DOCTRINE
OF EQUIVALENTS ......................................................................................................... 21

INSTRUCTION NO. 18 – MATERIALS TRANSFER AND EVALUATION AGREEMENT ("MTEA")
- CO-OWNERSHIP .......................................................................................................... 23

INSTRUCTION NO. 19 – ENFORCEABILITY BY A CO-OWNER ........................................... 24

INSTRUCTION NO. 20 – MATERIALS TRANSFER AND EVALUATION AGREEMENT ("MTEA")
- CONFIDENTIALITY ...................................................................................................... 25

INSTRUCTION NO. 21 – INVALIDITY – WRITTEN DESCRIPTION REQUIREMENT .................. 26

INSTRUCTION NO. 22 – CONCEPTION ........................................................................... 28

INSTRUCTION NO. 23 – CORROBORATION ..................................................................... 30

INSTRUCTION NO. 24 – OBVIOUSNESS ......................................................................... 32

INSTRUCTION NO. 25 – DEFINITION OF PRIOR ART FOR PATENTS OTHER THAN THE '084
PATENT ........................................................................................................................ 33

INSTRUCTION NO. 26 – THE FIRST FACTOR - SCOPE AND CONTENT OF THE PRIOR ART ... 35

INSTRUCTION NO. 27 – THE SECOND FACTOR - DIFFERENCES BETWEEN THE CLAIMED
INVENTION AND THE PRIOR ART .................................................................................... 36

INSTRUCTION NO. 28 – THE THIRD FACTOR - LEVEL OF ORDINARY SKILL IN THE ART .... 38

INSTRUCTION NO. 29 – THE FOURTH FACTOR - OTHER CONSIDERATIONS ....................... 40

INSTRUCTION NO. 30 – VERDICT .................................................................................. 42

**INSTRUCTION NO. 1 – INTRODUCTION**

Ladies and gentlemen, now that you have heard the evidence and the argument, it is my duty to instruct you about the applicable law.  It is your duty to follow the law as I will state it.  You must apply the law to the facts as you find them from the evidence in the case.  Do not single out one instruction as stating the law, but consider the instructions as a whole.  Do not be concerned about the wisdom of any rule of law stated by me.  You must follow and apply the law.

The lawyers have properly referred to some of the governing rules of law in their arguments.  If there is any difference between the law stated by the lawyers and these instructions, you must follow my instructions.

Nothing I say in these instructions indicates I have any opinion about the facts.  You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.[1]

---

[1]     Federal Jury Practice and Instructions, § 103.01.

**INSTRUCTION NO.  2 – BURDENS OF PROOF – PREPONDERANCE OF THE EVIDENCE**

"Establish by a preponderance of the evidence" means evidence, which as a whole, shows that the fact sought to be proved is more probable than not.  In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true.  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.[2]

---

[2]     Federal Jury Practice and Instructions, § 104.01 (6th ed., Aug. 2019 update).

**INSTRUCTION NO. 3 – BURDENS OF PROOF – CLEAR AND CONVICNING EVIDENCE**

"Clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction as to the matter at issue.  Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard.  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.[3]

---

[3]      Federal Jury Practice and Instructions, § 104.02 (6th ed., Aug. 2019 update).

**INSTRUCTION NO. 4 – TYPES OF EVIDENCE**

There are, generally speaking, two types of evidence presented during a trial—direct evidence and circumstantial evidence.  "Direct evidence" is the written or oral testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness.  Direct evidence can be provided through oral testimony or written documentation of matters of which the witness has first-hand knowledge.  "Indirect or circumstantial" evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

The law generally makes no distinction between the weight or value to be given to either direct or circumstantial evidence.  A greater degree of certainty is not required of circumstantial evidence.  You are required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.[4]

---

[4]       Federal Jury Practice and Instructions, § 104.05 (modified).

**INSTRUCTION NO. 5 – CONSIDERATION OF EVIDENCE**

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to, and all facts and events that may have been judicially noticed.

Statements and arguments by the lawyers are not evidence.   The lawyers are not witnesses.  What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence.   However, when the lawyers on both sides stipulate or agree on the existence of a fact, unless otherwise instructed, you must accept the stipulation and regard that fact as proved.

Any evidence to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.[5]

---

[5]      Federal Jury Practice and Instructions, § 103.30.

## INSTRUCTION NO. 6 – WITNESSES

The test is not which side brings the greater number of witnesses or presents the greater quantity of evidence; but which witnesses, and which evidence appeals to your minds a being the most accurate and otherwise trustworthy.

The testimony of a single witness which produces in your minds belief in the likelihood of truth is sufficient for the proof of any fact and would justify a verdict in accordance with such testimony, even though a number of witnesses may have testified to the contrary, if, after consideration of all the evidence in the case, you hold greater belief in the accuracy and reliability of the one witness.[6]

---

[6]     Instruction given by J. Spencer in *Atlantic, et al v. Dandy Products, Inc.*, 3:01-cv-00435 (E.D.Va.2003) (*aff'd by Atlantic, et al v. Dandy Products, Inc.*, 64 Fed.Appx. 757 (Fed.Cir. 2003) (modified from Federal Jury Practice and Instructions, § 104.54).

**INSTRUCTION NO. 7 – WITNESS CREDIBILITTY**

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief.  Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves.  In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.[7]

---

[7]      Federal Jury Practice and Instructions, § 105.01.

10

**INSTRUCTION NO. 8 – WITNESS IMPEACHMENT**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if the act is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.[8]

---

[8]  Federal Jury Practice and Instructions, § 105.04.

**INSTRUCTION NO. 9 – DEPOSITION TESTIMONY**

During the trial, certain testimony has been presented by way of deposition.   The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by attorneys for the parties to the case.   Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.[9]

---

[9]    Federal Jury Practice and Instructions, § 105.02 (modified).

**INSTRUCTION NO. 10 – CHARTS AND SUMMARIES**

Charts and summaries have been shown to you in order to help explain facts disclosed by books, records, and other documents in evidence in the case.  These charts or summaries are not themselves evidence or proof of any facts, unless marked and admitted by the Court as an exhibit (e.g., CX-0495 and PX-914).

The charts and summaries are used only as a matter of convenience.  To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.[10]

---

[10]     Federal Jury Practice and Instructions, § 104.50 (modified).

**INSTRUCTION NO. 11 – EXPERT OPINION TESTIMONY**

An expert witness is a person who by education and experience has become expert in some art, science, profession, or calling.  Expert witnesses give their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you should decide the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's opinion is outweighed by other evidence, you may disregard the opinion entirely.[11]

---

[11]   Federal Jury Practice and Instructions, § 104.40.

**INSTRUCTION NO. 12 – DEPENDENT CLAIMS**

There are two different types of claims in patents. One type is called an independent claim. The other is called a dependent claim.

An independent claim does not refer to any other claim of the patent. For example, claim 15 of the '541 patent is an independent claim. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim refers to at least one other claim in the patent. For example, claim 20 of the '541 patent is a dependent claim that refers to claim 15 of the'541 patent. A dependent claim includes all elements recited in the dependent claim, as well as all elements of the independent claim to which it refers.

For example, to establish literal infringement of claim 20 of the '541 patent, CSIRO, Nuseed and GRDC must show that it is more likely than not that BASF's Elite Event LBFLFK and Cargill's 17PH9093, 17PH9095, and 17PH9096 hybrid lines include each and every element of both claim 15 of the'541 patent and claim 20 of the '541 patent.[12] If you find that claim 15 of the '541 patent—from which claim 20 of the '541 patent depends—is not infringed, then you must find that claim 20 of the '541 patent is also not infringed.[13]

---

[12] BASF/Cargill note that depending on the evidence that is adduced at trial, one or more of these seed lines may no longer be accused of infringement, and the final jury instructions may need to be revised accordingly.

[13] AIPLA Model Instructions 3.5, *Infringement of Dependent Claims* (modified).

**INSTRUCTION NO. 13 – CLAIM CONSTRUCTION**

Before you decide whether CSIRO, Nuseed, and GRDC's patents are invalid or whether

BASF or Cargill has infringed the claims of those patents, you will have to understand the patent

claims.

The patent claims are numbered sentences at the end of the patent.  The patent claims

involved here are:

- Claim 5, beginning at column 215, line 48 of the '579 patent, which is Exhibit JX-009 in evidence;
- Claim 1, beginning at column 215, line 15 of the '357 patent, which is Exhibit JX-010 in evidence;
- Claim 33, beginning at column 217, line 24 of the '357 patent, which is Exhibit JX-010 in evidence;
- Claim 5, beginning at column 215, line 4 of the '033 patent, which is Exhibit JX-011 in evidence;
- Claim 2, beginning at column 217, line 26 of the '880 patent, which is Exhibit JX-013 in evidence;
- Claim 10, beginning at column 217, line 52 of the '880 patent, which is Exhibit JX-013 in evidence;
- Claim 4, beginning at column 241, line 61 of the '792 patent, which is Exhibit JX-012 in evidence;
- Claim 13, beginning at column 64, line 9 of the '346 patent, which is Exhibit JX-014 in evidence;
- Claim 20, beginning at column 374, line 36 of the '541 patent, which is Exhibit JX-015 in evidence; and
- Claim 1, beginning at column 231, line 58 of the '084 patent, which is Exhibit JX-017 in evidence.

These asserted claims are highlighted in blue in the copies of the patents contained in

your binders.  The yellow claims highlighted in the copies of the patents in your binders are not

themselves asserted, but are claims from which an asserted claim depends.

The claims are intended to define, in words, the boundaries of the inventor's rights.  Only

the claims of the patent can be infringed.  Neither the written description, nor the drawings of a

patent can be infringed.  Each of the claims must be considered individually.  You must use the same claim meaning for both your decision on infringement and your decision on invalidity.[14]

---

[14]      AIPLA Model Instructions 2.0, *Claim Construction Generally* (modified).

**INSTRUCTION NO. 14 – CLAIM CONSTRUCTION - THIS CASE**

It is my job as judge to provide to you the meaning of any claim language that must be interpreted.  You must accept the meanings I give you and use them when you decide whether any claim has been infringed and whether any claim is invalid.

Contained in your binder is a chart that includes the meanings of the words and groups of words from the patent claims that you must apply in your analysis.[15]

---

[15]    AIPLA Model Instructions 2.1, *Claim Construction for the Case* (modified); Court *Markman* Hearing Orders.

**INSTRUCTION NO. 15 – INFRINGEMENT GENERALLY**

I will now instruct you as to the rules you must follow when deciding whether CSIRO, Nuseed, and GRDC have proven that BASF and/or Cargill infringed any of the below-listed claims of the patents at issue.

Patent law gives the owner of a valid and enforceable patent the right to exclude others from making, using, offering to sell, or selling a patented invention within the United States, or importing a patented invention into the United States, during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.

CSIRO/GRDC/Nuseed allege that BASF's Elite Event and Cargill's 17PH9093, 17PH9095, and 17PH9096 seed lines infringe claim 13 of the '346 patent.

CSIRO/GRDC/Nuseed allege that oil from BASF's Elite Event seed line, and oil from Cargill's 17PH9093 seed line, infringe claim 20 of the '541 patent.

You have heard evidence about both CSIRO, Nuseed, and GRDC's intended product and BASF and Cargill's Accused Products. However, in deciding the issue of infringement you may not compare the Accused Products to CSIRO, Nuseed, and GRDC's intended product. Rather, you must compare the Accused Products to the asserted claims of the patents at issue when making your decision regarding infringement.[16]

---

[16]     AIPLA Model Instructions 3.0, Infringement (modified).

**INSTRUCTION NO. 16 – DIRECT AND LITERAL INFRINGEMENT**

In this case, CSIRO, Nuseed, and GRDC contend that BASF and Cargill have directly infringed claim 20 of the '541 patent. BASF and Cargill would be liable for direct infringement if you find that CSIRO, Nuseed, and GRDC have proven by a preponderance of the evidence that BASF and Cargill have made, used, offered for sale or sold in the United States, or imported into the United States, the invention defined in claim 20 of the '541 patent since the '541 patent issued on April 3, 2018. You must determine literal infringement with respect to that asserted claim individually.

To determine literal infringement, you must compare each Accused Product with each patent claim CSIRO, Nuseed, and GRDC assert is infringed, using my instructions as to the meaning of the terms the patent claims use.

Claim 20 of the '541 patent is literally infringed only if oil from BASF's Elite Event seed line and/or oil from Cargill's 17PH9093 seed line made, use, imported, sold or offered for sale since April 3, 2018 includes each and every element recited in that patent claim. If those seed lines do not contain one or more elements recited in claim 20 of the '541 patent there is no literal infringement of that claim. [17]

---

[17]     AIPLA Model Instructions 3.2, *Direct Infringement – Literal Infringement* (modified); *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 592 U.S. 915, 134 S. Ct. 2111, 2117 (2014); *Intellectual Sci. & Tech. v. Sony Elect.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009); *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1380 (Fed. Cir. 2007); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-31 (Fed. Cir. 2001); *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997); *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1481-82 (Fed. Cir. 1984).

**INSTRUCTION NO. 17 – DIRECT INFRINGEMENT – INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

The parties have agreed that the Accused Products (BASF's Elite Event seed line, and Cargill's 17PH9093, 17PH9095, and 17PH9096 seed lines) do not literally infringe claim 13 of the '346 Patent. Instead, you must then decide whether it is more probable than not that the Accused Products infringe claim 13 of the '346 patent under what is called the "doctrine of equivalents." Under the doctrine of equivalents, the Accused Products can infringe claim 13 of the '346 patent if they include components that are equivalent to those elements of the claim that are not literally present. If the Accused Products are missing an equivalent component to even one component of claim 13 of the '346 patent, then they cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual element of the asserted patent claim and decide whether the Accused Products have an equivalent component to each individual claim element that is not literally present.

An equivalent of an element is a component that is insubstantially different from the claimed element. One way of showing that an element is insubstantially different is to show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present.

In deciding whether any difference between a claim requirement and the Accused Products is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the component with the claimed requirement. However, known interchangeability between the

claim requirement and the component of the Accused Products is not necessary to find infringement under the doctrine of equivalents.[18]

---

[18]     AIPLA Model Instructions 3.7, *Direct Infringement – Infringement Under the Doctrine of Equivalents* (modified).

**INSTRUCTION NO. 18 – MATERIALS TRANSFER AND EVALUATION
AGREEMENT ("MTEA") - CO-OWNERSHIP**

On March 1, 2008, BASF and CSIRO entered into a contract, the Materials Transfer and

Evaluation Agreement, or MTEA,[19] in order to collaborate to jointly evaluate their respective

genetic developments to see if there were options for further enhancing the levels of omega-3

fatty acids in canola.[20]

Although the MTEA contract terminated by its terms in 2010,[21] several provisions

survived the termination—that is, several requirements of the MTEA continued to bind the

parties, even though the contract terminated and they were no longer working together.

Among the provisions that continued to bind the parties after the termination of the

MTEA contract are the Ownership provisions.[22]

Under the MTEA, BASF and CSIRO retained ownership of their separate materials, even

if they were shared under the MTEA, and could use their own materials for their own purposes

outside the MTEA.[23] But during the collaboration, under the MTEA contract, jointly created new

genetic materials, jointly created genetic lines, and joint research results, including any

intellectual property (such as patent rights) subsisting therein, were jointly owned by BASF and

CSIRO immediately upon their creation.[24]

---

[19]     Materials Transfer and Evaluation Agreement, § 1.1.
[20]     Materials Transfer and Evaluation Agreement, Recital B.
[21]     Materials Transfer and Evaluation Agreement, § 2.1.
[22]     Materials Transfer and Evaluation Agreement, §§ 6, 11.4.
[23]     Materials Transfer and Evaluation Agreement, § 6.2.
[24]     Materials Transfer and Evaluation Agreement, § 6.2.

**INSTRUCTION NO. 19 – ENFORCEABILITY BY A CO-OWNER**

Each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States, or import the patented invention into the United States, without the consent of and without accounting to the other owners.  If you determine that BASF is a co-owner of the U.S. Patent Nos. 8,106,226; 8,575,377; 8,853,432; 9,458,410; 9,963,723; 7,834,250; 9,926,579; 9,951,357; 9,970,033; 9,994,880; 9,994,792; 9,932,541; 9,969,954; and 10,125,084 (the "**MTEA Patents**"), BASF can make, use, offer to sell, sell or import into the United States any product covered by those patents without seeking permission from CSIRO, Nuseed, and GRDC. If BASF is a co-owner of the MTEA Patents, it can also grant Cargill a license to make, use, offer to sell, sell or import into the United States any product covered by those patents without seeking permission from CSIRO, Nuseed, and GRDC.

If you find that BASF has proven by a preponderance of the evidence[25] that it is a co-owner of the MTEA Patents, that determination of co-ownership fully resolves the infringement claim.   Thus, if you determine that BASF is a co-owner of the MTEA Patents, CSIRO, Nuseed, and GRDC cannot enforce against BASF and Cargill patents which they co-own. [26]

---

[25] *E.I. DuPont Co. v. Waddell*, 178 F. 407, 411 (4th Cir., 1910) (affirming the district court jury instruction setting a preponderance of the evidence as the standard for finding the existence of a contract right); *see also* Corpus Juris Secundum, § 977 (Sept. 2019 update) ("Actions on contracts are subject to the general rules governing the determination of weight and sufficiency of evidence in civil actions; thus a plaintiff must establish a right to recovery by a preponderance of the evidence.").

[26] 35 U.S.C. § 262; *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 344 (Fed. Cir. 1997); *Beriont v. GTE Labs., Inc.*, 535 F. App'x 919, 923 (Fed. Cir. 2013); *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1465 (Fed. Cir. 1998); *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1373 (Fed. Cir. 1999).

**INSTRUCTION NO. 20 – MATERIALS TRANSFER AND EVALUATION AGREEMENT ("MTEA") - CONFIDENTIALITY**

Other provisions that continued to bind the parties after the termination of the MTEA contract are the Confidentiality provisions.[27]

Confidential Information for BASF is defined as BASF's materials, BASF's genetic transformation techniques, BASF's genetic lines, the results of the joint research, and all other information disclosed by BASF to CSIRO under the MTEA. [28]  Confidential Information for CSIRO is defined as CSIRO's materials and intellectual property, the results of the joint research, and all other information disclosed by CSIRO to BASF under the MTEA. [29]

Under the MTEA Confidentiality provisions BASF and CSIRO:

"must keep Confidential Information of the other Party confidential"; and

"not use the other Party's Confidential Information other than to exercise its rights and perform its obligation under" the MTEA.[30]

BASF and CSIRO further agreed that "Joint Results may only be disclosed upon mutual Agreement of the Parties." [31]

---

[27]   Materials Transfer and Evaluation Agreement, §§ 8, 11.4.
[28]   Materials Transfer and Evaluation Agreement, § 1.1.
[29]   Materials Transfer and Evaluation Agreement, § 1.1.
[30]   Materials Transfer and Evaluation Agreement, § 8.1 (a) and (b).
[31]   Materials Transfer and Evaluation Agreement, § 8.3(b).

**INSTRUCTION NO. 21 – INVALIDITY – WRITTEN DESCRIPTION REQUIREMENT**

BASF and Cargill contend that the claims at issue of the patents at issue are invalid for failure to satisfy the written description requirement.

A patent claim is invalid if the patent does not contain an adequate written description of the claimed invention.  To satisfy the written description requirement, the patent specification must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, the inventors were in possession of the claimed invention. To satisfy the written description requirement, the patent specification must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used.  When determining whether the specification discloses the invention, the claim must be viewed as a whole.

It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; only enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention. However, a mere wish or plan for obtaining the invention does not constitute adequate written description.  Likewise, mere disclosure of a "laundry list" of options does not provide adequate specificity to constitute sufficient written description of one option on the list.

In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

1.  the nature and scope of the patent claims;

2.  the complexity, predictability, and maturity of the technology at issue;

3.  the existing knowledge in the relevant field; and

4.  the scope and content of the prior art.

26

The written description requirement is satisfied if the specification shows that the inventor possessed his or her invention as of the effective filing date of the claimed invention, even though the claims themselves may have been changed or new claims added since that time. However, the written description requirement exists to ensure that inventors do not attempt to preempt the future before it has arrived.  The written description requirement ensures that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventors' contribution to the field of art as described in the patent specification.

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or groups of claims.

If you find that BASF and Cargill have proven by clear and convincing evidence that the patents-ins-suit do not contain a written description for the inventions of the claims at issue, then you must find that the claims are invalid.[32]

---

[32]     AIPLA Model Instructions 9, *Written Description Requirement* (modified); *see also* 35 U.S.C. § 112; *Nuvo Pharms. V. Dr. Reddy's Labs. Inc.*, 923 F.3d 1368, 1376-77, 1380-81 (Fed. Cir. 2019); *Purdue Pharma L.P. v. Iancu*, 767 F. App'x 918, 924 (Fed. Cir. 2019); *Centocor Ortho Biotech, Inc. v. Abbott Labs.,* 636 F.3d 1341, 1348 (Fed. Cir. 2011); *Billups-Rothenberg, Inc. v. Associated Reg'l & Univ. Pathologists, Inc.*, 642 F.3d 1031, 1036 (Fed. Cir. 2011); *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1353–54 (Fed. Cir. 2010).

**INSTRUCTION NO. 22 – CONCEPTION**

The conception date in this case is disputed with regard to claim 1 of the '357 patent and claim 2 of the '880 patent.  CSIRO, Nuseed, and GRDC assert that claim 1 of the '357 patent and claim 2 of the '880 patent were conceived of in February 2003.  BASF and Cargill assert that the evidence shows that these claims of the '357 and '880 patents were not conceived as of that date, and that the date of invention is therefore the earliest filing date of the patents, April 22, 2004.

I will now explain to you how to determine this date.

There are two parts to the making of an invention: "conception" and "reduction to practice."

Conception is the mental part of an inventive act, *i.e.*, the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice.  Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation.  However, conception is not complete if subsequent experimentation, especially experimental failures, reveals uncertainty to undermine the inventor's idea such that it is not yet a definite and permanent reflection of the claimed invention.[33]  To show conception, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea.  Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

---

[33]     *Burroughs Wellcome Co. v. Barr Labs.*, Inc., 40 F.3d 1223, 1229 (Fed. Cir. 1994)

A conception is not complete if the subsequent course of experimentation, especially experimental failures, reveals uncertainty that so undermines the specificity of the inventor's idea that it is not yet a definite and permanent reflection of the complete invention as it will be used in practice.[34]

The actual making of the invention is referred to as "reduction to practice."  An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose. Under the patent laws, the date of invention is generally the date that the patent application was filed.  This is also referred to as a "constructive reduction to practice." In this case, that date is April 22, 2004.[35]

---

[34]    *See, e.g., Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1229 (Fed. Cir. 1994).

[35]    Fed. Cir. Bar Ass'n. Model Patent Jury Instr. 4.3a-1 (July 2016) (modified).

**INSTRUCTION NO. 23 – CORROBORATION**

An inventor's testimony regarding the facts surrounding the priority of his or hers invention, standing alone, cannot rise to the level of clear and convincing evidence. Such testimony must be corroborated.  The purpose of requiring corroboration is to prevent fraud by requiring independent confirmation of the alleged inventor's testimony. This requirement applies to all parties in the present case.[36]

There is no particular formula that a party must follow in providing corroboration of an alleged prior invention.  Whether an alleged inventor's testimony has been corroborated is determined by a rule of reason analysis.  Under the rule of reason, you must evaluate all of the pertinent evidence in determining whether an alleged inventor's story is credible.  Corroboration may be, but does not have to be, in the form of 1) oral testimony of someone other than the alleged inventor; 2) contemporaneous physical exhibits such as documents or research notes; or 3) circumstantial evidence surrounding the creation of the invention.  Documents or physical evidence contemporaneous with the inventive process provides the most reliable proof that an inventor's testimony has been corroborated.

In evaluating whether testimony has been corroborated by the testimony of another witness, you should consider the following factors:

1. the relationship between the corroborating witness and the witness whose testimony is being corroborated;

2. the time between the events testified about and trial;

3. whether the corroborating or testifying witness has any financial or other interest in the outcome of this lawsuit;

---

[36]     *Thompson v. Haynes*, 2002 WL 31155195 (Fed. Cir. Sept. 30, 2002); *Loral Fairchild Corp. v. Matsushita Electrical Ind. Co.*, 266 F.3d 1358, 1364 (Fed. Cir. 2001); *Cooper v. Goldfarb*, 154 F.3d 1321, 1330 (Fed. Cir. 1998); *Coleman v. Dines*, 754 F.2d 353, (Fed. Cir. 1985).

4. whether the corroborating witness's testimony has been contradicted or impeached;

5. the extent and details of the corroborating testimony; and

6. the corroborating witness's familiarity with the subject matter of the patented inventions and their conception.[37]

---

[37]     *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728 (Fed. Cir. 2002); *Sandt Technology v. Rescoe*, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001); *Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000); *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998); *Ethicon v. United States*, 135 F.3d 1456, 1461 (Fed. Cir. 1998) (*citing Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir.1997); *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993); *Knorr v. Pearson*, 671 F.2d1368, 1373 (CCPA 1982)).

**INSTRUCTION NO. 24 – OBVIOUSNESS**

BASF and Cargill contend that claims of the patents at issue are invalid because the claimed inventions are "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention as of the cutoff date.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent.  You should not use the patent as a road map for selecting and combining items of prior art.  You must put yourself in the place of a person of ordinary skill in the art as of the cutoff date.

The following factors must be evaluated to determine whether BASF and Cargill have established that the claimed invention is obvious:

1.  the scope and content of the prior art relied upon by BASF and Cargill;

2.  the differences, if any, between each claimed invention of the patents at issue that BASF and Cargill contend is obvious and the prior art;

3.  the level of ordinary skill in the art as of the Cutoff  Date; and

4.  additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.[38]

I will now explain each of the four factors in more detail.

---

[38]     AIPLA Model Instructions 7.0, *Obviousness – Generally* (modified).

**INSTRUCTION NO. 25 – DEFINITION OF PRIOR ART FOR PATENTS OTHER THAN THE '084 PATENT[39]**

What qualifies as prior art depends on whether a patent properly claims priority back its applications (for example, with proper written description support in those patent applications for the patent at issue) or the invention date of the patented claims (if proven). Therefore, different patents can have different priority dates.

Prior art includes any of the following items received into evidence during trial:

1.  any product or method that was publicly known or used by others in the United States before the claimed invention was invented;

2.  any product or method that was in public use or on sale in the United States before the following dates:

    -   April 22, 2004 for Claim 5 of the '579 Patent, Claims 1 and 33 of the '357 Patent, Claim 5 of the '033 Patent, and Claims 2 and 10 of the '880 patent;
    -   April 22, 2003 for Claim 1 of the '357 Patent and Claim 2 of the '880 Patent if CSIRO/Nuseed/GRDC can prove conception as of February 2003;
    -   November 18, 2008 for Claim 4 of the '792 Patent;

3.  any patents that issued before the dates above;

4.  any publications having dates of public accessibility before the date above;

5.  any international PCT patent application that was published in English and filed by another person before the claimed invention was invented; and

6.  any product or method that was made by anyone in the United States before the date of invention where the claimed invention was not later abandoned, suppressed, or concealed.

In this case, BASF and Cargill contend that the following items are prior art:

-   **The '579, '357, '033, and '880 Patents:**

    o   Olga V. Sayanova and Jonathan A. Napier, *Eicosapentaenoic acid: biosynthetic routes and the potential for synthesis in transgenic plants*, 65 Phytochemistry 147-158 (2004) ("Sayanova 2004");

---

[39]     AIPLA Model Instructions 5.0.1, *Prior Art Defined (pre-AIA)* (modified).

- o   Frédéric Domergue, et al., *Acyl Carriers Used as Substrates by the Desaturases and Elongases Involved in Very Long-chain Polyunsaturated Fatty Acids Biosynthesis Reconstituted in Yeast*, 278(37) J. Biol. Chem. 35115-35126 (2003) ("Domergue 2003");

- o   Production of Very Long Chain Polyunsaturated Fatty Acids in Oilseed Plants, International Pub. No. WO 2004/071467 ("Kinney 2004")

- **The '792 Patent:**

  - o   Sayanova 2004;

  - o   Kinney 2004

**INSTRUCTION NO. 26 – THE FIRST FACTOR - SCOPE AND CONTENT OF THE PRIOR ART**

In deciding obviousness, the prior art includes the following items received into evidence during the trial:

- o   JX-39:  Sayanova
- o   JX-66:  Domergue
- o   JX-67:  Kinney

A prior art reference may be considered if it discloses information designed to solve any problem or need addressed by the patent. A prior art reference may also be considered if it discloses information that has obvious uses beyond its main purpose and if a person of ordinary skill in the art would reasonably examine that reference when trying to solve any problem or need addressed by the patent.[40]

---

[40]    AIPLA Model Instructions 7.1 *The First Factor: Scope and Content of Prior Art* (modified).

**INSTRUCTION NO. 27 – THE SECOND FACTOR - DIFFERENCES BETWEEN THE CLAIMED INVENTION AND THE PRIOR ART**

In deciding whether the inventions of the patents at issue were obvious, you must consider what relevant differences there are between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the invention date.

In analyzing this issue, do not focus solely on the differences between the claimed invention and the prior art because the test is not whether there are differences. Rather the test is whether the inventions as a whole, would have been obvious to one having ordinary skill in the art.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, or if a person of ordinary skill in the art would have multiple alternatives to select from, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed

at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.[41]

---

[41]     AIPLA Model Instructions 7.2 *The Second Factor: Differences Between the Claimed Invention and the Prior Art* (modified).

**INSTRUCTION NO. 28 – THE THIRD FACTOR - LEVEL OF ORDINARY SKILL IN THE ART**

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the claimed invention as of the invention date. For the purposes of obviousness, prior art must be evaluated from the perspective of one of ordinary skill in the field of the invention as of the following dates:[42]

- Claim 5 of the '579 Patent, Claim 5 of the '033 Patent, Claims 1 and 33 of the '357 Patent, Claims 2 and 10 of the '880 Patent
    - BASF/Cargill assert the date should be no earlier than April 22, 2004.
    - CSIRO/Nuseed/GRDC assert the date for claim 1 of the '357 and claim 2 of the '880 should be February 2003.

- Claim 4 of the '792 Patent
    - The date should be no earlier than November 18, 2008.

The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.  In this case, a person of ordinary skill in the art would be someone with a Ph.D. in plant sciences, lipid biochemistry, or lipid metabolism and at least 3 years of work experience (excluding Ph.D. thesis studies) in researching and/or developing novel fatty acids that are synthesized in transgenic plants, including *Arabidopsis thaliana* and *Brassica napus* canola.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

1. the level of education and experience of persons actively working in the field as of the dates listed above, including the inventor(s) and those at BASF and Cargill;

---

[42]     AIPLA Model Instructions 5.3, *Person of Ordinary Skill in the Art* (modified).

2.  the types of problems encountered in the art as of the dates listed above; and

3.  the sophistication of the technology in the art as of the dates listed above, including the rapidity with which innovations were made in the art as of the dates listed above.[43]

---

[43]     AIPLA Model Instructions 7.3, *The Third Factor: Level of Ordinary Skill* (modified).

**INSTRUCTION NO. 29 – THE FOURTH FACTOR - OTHER CONSIDERATIONS**

Before deciding the issue of obviousness for each claimed invention of the patents at issue, you must also consider certain factors, which may help to determine whether the invention would have been obvious. No factor alone is dispositive, and you must consider the obviousness or non-obviousness of the invention as a whole. Certain of these factors include:

1. <u>Simultaneous Invention</u>. Was there an independently made, simultaneous invention? Such inventions are persuasive evidence that the claimed product was the product of only ordinary skill.[44]  Simultaneous invention demonstrates what others in the field actually accomplished.[45]

2. <u>Commercial Success</u>. Were CSIRO, Nuseed, and GRDC's products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

3. <u>Long-Felt Need</u>. Was there long-felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?

4. <u>Failure of Others</u>. Did others try, but fail, to solve the problem solved by the claimed invention?

5. <u>Copying</u>. Did others copy the claimed invention?

6. <u>Unexpected Results</u>. Did the claimed invention achieve unexpectedly superior results over the closest prior art?

7. <u>Praise</u>. Did others in the field, including CSIRO, Nuseed, GRDC, BASF, or Cargill praise the claimed invention or express surprise at the making of the claimed invention?

8. <u>Acceptance of Licenses</u>. Did others accept licenses under the patents at issue because of the merits of the claimed invention?

Answering all, or some, of these questions "yes" may suggest that the claim was not obvious. These factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claim. Even if you conclude that some of the above factors

---

[44]     *Trustees of Columbia University in City of New York v. Illumina, Inc.*, 620 F. App'x 916, 929 (Fed. Cir. 2015)

[45]     *Id.*

have been established, those factors should be considered along with all the other evidence in the case in determining whether BASF and Cargill have proven that the claimed invention would have been obvious.[46]

There are also factors which can support the obviousness of the invention. For example independently made, simultaneous inventions are persuasive evidence that the claimed invention was the product only ordinary mechanical or engineering skill.[47] Simultaneous invention demonstrates what others in the field actually accomplished.[48]

---

[46]   AIPLA Model Instructions 7.4 *The Fourth Factor: Other Considerations* (modified).

[47]   *Trustees of Columbia University in City of New York v. Illumina, Inc.*, 620 F. App'x 916, 929 (Fed. Cir. 2015)

[48]   *Id.*

41

**INSTRUCTION NO. 30 – VERDICT**

Your verdict must represent the considered judgment of each juror. In other words, your verdict must be unanimous.

Each of you must decide the case for yourself, but only after an impartial consideration of all the evidence in the case with your fellow jurors.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment. In the course of your deliberations, do not hesitate to re-examine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of the evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times you are not partisans.

You are judges—judges of the facts.

Your sole interest is to seek the truth from the evidence in the case.

Upon retiring to the jury room, you should first select one of your members to act as your foreman or forewoman who will preside over your deliberations and will be your spokesperson here in court.

Forms of verdict have been prepared for your convenience.

You will take the instructions, the exhibits, and the verdict forms to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreman or forewoman fill it in, date and sign the appropriate form, and then return to the courtroom.

If, during your deliberations, you should desire to communicate with the Court, your message or question must be put in writing and signed by the foreman or forewoman, and you will then give the note to the Marshal who will bring it to my attention.

42

The Court will then respond as promptly as possible, either in writing or by having you return to the courtroom so that the Court can address you orally.

If you do transmit a message or question to the Court, you must not state or specify your numerical division at that time.

Finally, you should not interpret anything the Court has said or done during the trial as suggesting to you what the Court thinks your verdict should be.

The verdict is exclusively your duty and responsibility.[49]

---

[49]     Eighth Cir. Civ. Jury Instr. § 3.06 (2008).

Dated: October 28, 2019

Respectfully submitted,

*/s/ Ahmed J. Davis*
Ahmed J. Davis (Va. Bar No. 43982)
adavis@fr.com
Daniel R. Gopenko (Va. Bar No. 83932)
gopenko@fr.com
Taylor Caldwell (admitted *pro hac vice*)
tcaldwell@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave., SW
Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070

Christopher R. Dillon (admitted *pro hac vice*)
cwd@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA  02210-1878
Telephone: (617) 542-5070

Michael E. Florey (admitted *pro hac vice*)
florey@fr.com
Elizabeth Flanagan (admitted *pro hac vice*)
betsy.flanagan@fr.com
Brianna Chamberlin (admitted *pro hac vice*)
chamberlin@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN  55402
Telephone: (612) 335-5070

Dexter Whitley (admitted *pro hac vice*)
whitley@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE
21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005

*Counsel for Cargill, Incorporated*

*/s/ N. Thomas Connally*
N. Thomas Connally, III (VSB # 36318)
Thomas B. Hunt (VSB # 90803)
Emily A. Gomes (VSB # 87571)
HOGAN LOVELLS US LLP
8350 Broad Street
17th Floor
Tysons, VA 22102
Tel: (703) 610-6100
Fax: (703) 610-6200
tom.connally@hoganlovells.com
thomas.hunt@hoganlovells.com
emily.gomes@hoganlovells.com


Arlene L. Chow (admitted *pro hac vice*)
Ernest Yakob (admitted *pro hac vice*)
Takashi Okuda (admitted *pro hac vice*)
Jared S. Schubert (admitted *pro hac vice*)
Nitya Anand (admitted *pro hac vice*)
Una Chiao-Yi Fan (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
390 Madison Avenue,
New York, NY 10017
Tel: (212) 918-3000
Fax: (212) 918-3100
arlene.chow@hoganlovells.com
ernest.yakob@hoganlovells.com
takashi.okuda@hoganlovells.com
jared.schubert@hoganlovells.com
nitya.anand@hoganlovells.com
una.fan@hoganlovells.com


Anna K. Shaw (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 13th Street, NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
anna.shaw@hoganlovells.com


*Counsel for BASF Plant Science, LP and BASF Plant Science GmbH*


45

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 28th day of October, 2019, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record. I further certify that a true copy of the foregoing was caused to be served by email on this 28th day of October 2019 upon all counsel of record.

*/s/ Ahmed J. Davis*
(Va. Bar No. 43982)
FISH & RICHARDSON P.C.
1000 Maine Ave., SW
Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070

46