## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Norfolk Division

| | | |
|---|---|---|
| BASF PLANT SCIENCE, LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMONWEALTH SCIENTIFIC AND | ) | |
| INDUSTRIAL RESEARCH | ) | |
| ORGANISATION, | ) | |
| | ) | |
| Defendant. | ) | C.A. No. 2:17-CV-503-HCM |
| | ) | |
| COMMONWEALTH SCIENTIFIC AND | ) | JURY TRIAL DEMANDED |
| INDUSTRIAL RESEARCH | ) | |
| ORGANISATION, GRAINS RESEARCH | ) | |
| AND DEVELOPMENT CORP., AND | ) | |
| NUSEED PTY LTD., | ) | |
| | ) | |
| Plaintiffs-Counterclaimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BASF PLANT SCIENCE, LP, AND | ) | |
| CARGILL, INCORPORATED, | ) | |
| | ) | |
| Defendants- | ) | |
| Counterdefendants, | ) | |
| | ) | |
| BASF PLANT SCIENCE GMBH, | ) | |
| | ) | |
| Counter-Counterclaimant. | ) | |
| | ) | |

## COUNTERCLAIMANTS' FINAL PROPOSED JURY INSTRUCTIONS – LIABILITY PHASE

Under the Court's Pretrial Order (Dkt. No. 153) and Local Civil Rule 51, Commonwealth Scientific and Industrial Research Organisation ("CSIRO"), Nuseed Pty. Ltd. ("Nuseed"), and Grains Research and Development Corp. ("GRDC") hereby propose the following jury instructions, subject to pending motions.

# <u>Contents</u>

COUNTERCLAIMANTS' FINAL PROPOSED JURY INSTRUCTIONS – LIABILITY PHASE ............................................................................................................. 0

COUNTERCLAIMANTS' PROPOSED FINAL JURY INSTRUCTIONS TO BE READ AT THE CLOSE OF EVIDENCE .................................................................................. 4

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 1 ...................................... 5

*INTRODUCTION* .......................................................................................................... *5*

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 1 ...................................... 6

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 2 ...................................... 7

*THE PARTIES AND THEIR CONTENTIONS* ................................................................... *7*

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 3 ...................................... 9

*CONSIDERING WITNESS TESTIMONY, EVIDENCE AND EXHIBITS* ................................. *9*

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 4 .................................... 10

*FOREIGN ENTITIES TREATED EQUALLY* ..................................................................... *10*

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 5 .................................... 11

*CORPORATIONS ACT THROUGH PEOPLE (30(b)(6) TESTIMONY)* ................................ *11*

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 6 .................................... 12

*JUDGE HAS NO OPINION ABOUT THE CASE* ................................................................ *12*

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 7 .................................... 13

*DIRECT AND CIRCUMSTANTIAL EVIDENCE* ................................................................ *13*

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 8 .................................... 14

*DEPOSITION TESTIMONY* ........................................................................................... *14*

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 9 .................................... 15

*CONSIDERING EVIDENCE* ........................................................................................... *15*

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 10 .................................. 16

*WEIGHING CREDIBILITY* ........................................................................................... *16*

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 11 .................................. 18

*EXPERT WITNESSES* ................................................................................................... *18*

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 12 .................................. 19

*EXHIBITS* ................................................................................................................... *19*

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 13 .................................. 20

*PATENT CLAIMS GENERALLY* ..................................................................................... *20*

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 14 .................................. 21

*CLAIM COVERAGE* ...................................................................................................... *21*

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 15 ................................ 23

*INDEPENDENT AND DEPENDENT CLAIMS* ........................................................ 23

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 16 ................................ 24

*CLAIM CONSTRUCTION* .............................................................................. 24

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 17 ................................ 26

*BURDEN OF PROOF FOR INFRINGEMENT* ...................................................... 26

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 18 ................................ 27

*INFRINGEMENT* ....................................................................................... 27

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 19 ................................ 29

*WILLFUL INFRINGEMENT* .......................................................................... 29

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 20 ................................ 30

*NO COMPARISON OF ACCUSED PRODUCTS WITH PATENT OWNERS' PRODUCTS FOR INFRINGEMENT* ................................................................................. 30

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 21 ................................ 31

*CONTINUATION PATENT APPLICATIONS* ...................................................... 31

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 22 ................................ 33

*VALIDITY GENERALLY* .............................................................................. 33

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 23 ................................ 34

*A PERSON OF ORDINARY SKILL IN THE ART* ................................................ 34

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 24 ................................ 35

*PRIOR ART* ............................................................................................ 35

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 25 ................................ 37

*OBVIOUSNESS* ........................................................................................ 37

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 26 ................................ 41

*WRITTEN DESCRIPTION* ........................................................................... 41

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 28 ................................ 44

UNCLEAN HANDS [ADVISORY] ................................................................... 44

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 29 ................................ 45

*DELIBERATIONS GENERALLY* .................................................................... 45

COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 30 ................................ 47

*QUESTIONS DURING DELIBERATIONS* ......................................................... 47

**<u>COUNTERCLAIMANTS' PROPOSED FINAL JURY INSTRUCTIONS TO BE READ
AT THE CLOSE OF EVIDENCE</u>**

## <u>COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 1</u>
### <u>INTRODUCTION</u>[1]

Now that you have heard the evidence and the argument, it is my duty to instruct you about the applicable law.  It is your duty to follow the law as I will state it.  You must apply it to the facts as you find them from the evidence in the case.  Do not single out one instruction as stating the law, but consider the instructions as a whole.  Do not be concerned about the wisdom of any rule of law stated by me.  You must follow and apply the law.

The lawyers have properly referred to some of the governing rules of law in their arguments.  If there is any difference between the law stated by the lawyers and these instructions, you must follow my instructions.

Nothing I say in these instructions indicates that I have any opinion about the facts.  You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

---

[1]  *See* Trial Tr. June 21, 2017 at 1246–47, *Cobalt Boats, LLC v. Brunswick Corp.*, No. 2:15-cv-00021 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425); Trial Tr. November 17, 2014 at 1720–21, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 1
### INTRODUCTION

I will now summarize the issues that you must decide at this stage of the case and for which I will provide instruction to guide your deliberations.  You must decide the following issues:

1.  Whether Proponents have proved by a preponderance of the evidence that Opponents' products infringe Claim 20 of the '541 Patent.

2.  Whether Opponents are co-owners of the patents in suit.

3.  Whether Opponents have proved by clear and convincing evidence that the patents in suit are invalid.

**COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 2**
**THE PARTIES AND THEIR CONTENTIONS**[2]

As I did at the start of the case, I will first give you a general summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, Proponents allege Opponents, by making, using, selling, offering for sale—in the past and in the future—the seeds, oil, and plants containing what is called Elite Event "LBFLFK," including plant lines by the names of 17PH9093, 17PH9095, and 17PH9096, infringe the following claims:

*Group A*

(1) claims 1 and 33 of U.S. Patent No. 9,951,357;

(2) claim 5 of U.S. Patent No. 9,926,579;

(3) claim 5 of U.S. Patent No. 9,970,033;

(4) claims 2 and 10 of U.S. Patent No. 9,994,880;

*Group B*

(5) claim 4 of U.S. Patent No. 9,994,792;

*Group D*

(6) claim 20 of U.S. Patent No. 9,932,541; and

*Group E*

(7) claim 1 of U.S. Patent No. 10,125,084;

I will refer to these claims collectively as the "asserted claims" and the patents collectively as the "patents-in-suit." BASF's Elite Event LBFLFK and Cargill's plant lines 17PH9093,

---

[2] *See* Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.1.

17PH9095, and 17PH9096 are the products accused of patent infringement. I will refer to these products collectively as the "accused products."

Opponents argue that the asserted claims are invalid or unenforceable.  Opponents also argue that the accused products do not infringe claim 20 of the '541 Patent.

Your job is to decide whether the asserted claims of the patents-in-suit are infringed by the accused products and are valid.  You will also need to make a finding as to whether the infringement was willful.

**COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 3**
**CONSIDERING WITNESS TESTIMONY, EVIDENCE AND EXHIBITS**[3]

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to.

Statements and arguments by the lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence. However, when the parties on both sides stipulate or agree on the existence of a fact, unless otherwise instructed, you must accept the stipulation and regard that fact as proved.

Any evidence to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.

---

[3] *See* Trial Tr. June 21, 2017 at 1247–48, *Cobalt Boats, LLC v. Brunswick Corp., Inc.*, No. 2:15-cv-00201 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425); Trial Tr. November 17, 2014 at 1722, 1724–25, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

<u>**COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 4**</u>
**FOREIGN ENTITIES TREATED EQUALLY**[4]

The case should be considered and decided by you as an action between parties of equal standing in the community of equal worth and holding the same or similar stations of life. All persons and corporations, foreign or domestic, stand equal before the law and are to be dealt with as equals in a court of justice in the United States.

---

[4] *See* Trial Tr. June 21, 2017 at 1247, *Cobalt Boats, LLC v. Brunswick Corp.*, No. 2:15-cv-00021 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425); Trial Tr. November 17, 2014 at 1721–22, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

**COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 5
CORPORATIONS ACT THROUGH PEOPLE (30(b)(6) TESTIMONY)** [5]

A corporation may act only through natural persons as its agents or employees.  Generally, any agents or employees of a corporation may bind the corporation by their acts and declarations made while acting within the scope of their authority delegated to them by the corporation or within the scope of their duties as employees of the corporation.

---

[5]  *See* Trial Tr. June 21, 2017 at 1254, *Cobalt Boats, LLC v. Brunswick Corp.*, No. 2:15-cv-00021 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425).

### COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 6
### JUDGE HAS NO OPINION ABOUT THE CASE[6]

During the course of a trial, the judge occasionally asks questions of witnesses in order to bring out facts not then adequately explained by their testimony, and to expedite the presentation of evidence.  Do not presume that the judge holds any opinion on the matters to which the judge's questions may have related.  Remember at all times you as jurors are at liberty to disregard all questions by the judge in deciding facts in determining the weight of the evidence, but you are governed by the judge's instructions as to the law applicable to this case.

Nothing the Court says, and neither any ruling of the Court nor any remark which the Court has made is to be taken as an indication that the Court has any opinion of the facts of the case or what that opinion may be.

---

[6]  *See* Trial Tr. June 21, 2017 at 1254, *Cobalt Boats, LLC v. Brunswick Corp.*, No. 2:15-cv-00021 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425); Trial Tr. November 17, 2014 at 1729, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 7
### DIRECT AND CIRCUMSTANTIAL EVIDENCE[7]

Generally speaking, there are two types of evidence presented during a trial—direct evidence and circumstantial evidence.  "Direct evidence" includes the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness, or the admission of a document.  "Indirect or circumstantial" evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

The law generally makes no distinction between the weight or value to be given to either direct or circumstantial evidence.  A greater degree of certainty is not required of circumstantial evidence.  You should weigh all of the evidence in the case and decide the issues after considering all of the Court's instructions, all of the evidence, and the arguments of counsel.

---

[7] *See* Trial Tr. June 21, 2017 at 1249–50, *Cobalt Boats, LLC v. Brunswick Corp.*, No. 2:15-cv-00021 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425); Trial Tr. November 17, 2014 at 1723, 1726, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 8
### DEPOSITION TESTIMONY[8]

Certain testimony in the case has been presented to you through depositions.  A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial.  If a witness cannot be present to testify in person, then the witness's testimony may be presented under oath in the form of a deposition.  The attorneys representing the parties in this case questioned these deposition witnesses under oath.  At that time, a court reporter was present and recorded their sworn testimony.

Deposition testimony is entitled to the same consideration by you, the jury, as testimony given by a witness in person from the witness stand in open court.  Accordingly, you should judge the credibility and importance of the deposition testimony to the best of your ability, just as if the witness had testified before you in open court.

---

[8]  Trial Tr. November 17, 2014 at 1728, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

## <u>COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 9</u>
### CONSIDERING EVIDENCE[9]

You are to consider only the evidence in the case.  However, you are not limited to the statements of the witnesses.  You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

You should also use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

---

[9]  *See* Trial Tr. June 21, 2017 at 1361, *Cobalt Boats, LLC v. Brunswick Corp.*, No. 2:15-cv-00021 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425); Trial Tr. November 17, 2014 at 1724, 1726–28, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 10
### WEIGHING CREDIBILITY[10]

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness's intelligence, credibility, motive and state of mind, and demeanor or manner while testifying.  Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.  An innocent failure of recollection or the like is not an uncommon experience.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves.  In short, you may accept or reject the testimony of any witness, in whole or in part.

---

[10]  *See* Trial Tr. June 21, 2017 at 1250–51, 1254–55, *Cobalt Boats, LLC v. Brunswick Corp.*, No. 2:15-cv-00021 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425).

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

Further, evidence that, at some other time while not under oath a witness who is not a party to this action has said or done something inconsistent with the witness's testimony at the trial, may be considered for the sole purpose of judging the credibility of the witness.  However, such evidence may never be considered as evidence of proof of the truth of any such statement.

Where the witness is a party to the case, and by such statement or other conduct admits some fact or facts against the witness's interest, then such statement or other conduct, if knowingly made or done, may be considered as evidence of the truth of the fact or facts so admitted by such party, as well as for the purpose of judging the credibility of the party as a witness.

An act or omission is "knowingly" done if the act is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 11
### EXPERT WITNESSES[11]

The rules of evidence may limit the ability of witnesses to testify as to opinions or conclusions. Greater latitude is given to those whom we call "expert witnesses." Witnesses who, by education or experience, have become experts in some art, science, profession, or calling, may state an opinion as to relevant and material matter, as to which they possess expertise, and may also state their reasons for the opinion. The experts in this case were: (1) Dr. Ljerka Kunst, on behalf of Proponents; and (2) Dr. Denis Murphy, on behalf of Opponents.

Opinion testimony by qualified expert witnesses is competent evidence. You should consider each expert opinion received in evidence in this case, and give each such opinion the weight you find it deserves. You may disregard an expert opinion entirely, if you should decide that any expert is unqualified or lacks credibility, or if you should conclude that the factual basis or reason given in support of the opinion are not proven or sound, or that the opinion is outweighed by other evidence.

---

[11] *See* Trial Tr. June 21, 2017 at 1253, *Cobalt Boats, LLC v. Brunswick Corp.*, No. 2:15-cv-00021 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425); Trial Tr. November 17, 2014 at 1729, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

## <u>COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 12</u>
### EXHIBITS

Certain exhibits have been shown to you during the trial that were illustrations.  We call these types of exhibits demonstrative exhibits or sometimes just demonstratives for short.

Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial.  If your recollection of the evidence differs from the demonstratives, you should rely on your recollection.

Demonstrative exhibits are not evidence, but the witness's testimony concerning the demonstrative evidence or the demonstrative exhibit is evidence.

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 13
### PATENT CLAIMS GENERALLY[12]

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it was a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issue of infringement.

---

[12]  *See* Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.2.2.1; Trial Tr. June 21, 2017 at 1263–64, *Cobalt Boats, LLC v. Brunswick Corp.*, No. 2:15-cv-00021 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425); Trial Tr. November 17, 2014 at 1736, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

### COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 14
### CLAIM COVERAGE[13]

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a physical object, product, or process where each of the claim elements or limitations is present in that physical object, product, or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose. As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you

---

[13] *See* Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.2.2.2; Trial Tr. November 17, 2014 at 1739, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement.

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 15
### INDEPENDENT AND DEPENDENT CLAIMS[14]

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, for example, claim 1 of the '880 Patent is an independent claim.

The remainder of the claims in the '880 Patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim to which it refers. Here, claim 2 depends from claim 1. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A product that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim.

---

[14]  *See* Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.2.2.2a; Trial Tr. June 21, 2017 at 1258–59, *Cobalt Boats, LLC v. Brunswick Corp.*, No. 2:15-cv-00021 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425); Trial Tr. November 17, 2014 at 1733, 1740–41, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 16
### CLAIM CONSTRUCTION[15]

The Court through its claim construction and the parties by stipulation have provided you the meaning of the claim language. You must accept the meanings provided to you and use them when you decide whether any claim of the patent has been infringed. The meanings of the words and groups of words from the patent claims so provided are as follows:

| Claim Terms | Court's Construction |
|---|---|
| "at least [X]% | This term generally has its plain and ordinary meaning. Whether an upper limit is included depends on the context of the exact claim. The Court will determine whether such limits should be read into the asserted claims after the claim winnowing process. |
| "less than [X]%" | This term generally has its plain and ordinary meaning. Whether a lower limit is included depends on the context of the exact claim. The Court will determine whether such limits should be read into the asserted claims after the claim winnowing process. |
| "includes [X] % " | This term means the same as "comprises [x]%." |
| SEQ ID NO: [X]" | No construction is necessary – this term means what it says. |
| "operably linked to one or more promoters that are capable of directing expression . . . in [the cell/seed]" | This term requires no construction. However, the term will be phrased to the jury in a different way to facilitate their comprehension of otherwise complicated and technical jargon. |
| "a desaturase [an exogenous desaturase] which desaturates an acyl-CoA substrate" | This term has its plain and ordinary meaning, no vertebrate limitation. |

| Claim Terms | Stipulated Construction |
|---|---|
| "A Brassica plant cell for producing [DPA] and [DHA] in an esterified form as part of triacylglycerols in the plant cell" / "in an | No construction necessary. The parties agree that the terms "triacylglycerols" and "triglycerides" have identical meanings. |

---

[15] *See* Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.2.2.3; Trial Tr. June 21, 2017 at 1260–63, *Cobalt Boats, LLC v. Brunswick Corp., Inc.*, No. 2:15-cv-00201 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425); Trial Tr. November 17, 2014 at 1738, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

| esterified form as part of triglycerides" | |
| --- | --- |

The use of the term "plain and ordinary meaning" with respect to the Court's claim constructions in this case refers to the meaning of a term as viewed from the perspective of a person having ordinary skill in the art.

**COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 17**
**BURDEN OF PROOF FOR INFRINGEMENT**[16]

Proponents have the burden of proof upon the issue of infringement and must prove that issue by a preponderance evidence.  A preponderance of the evidence in the case means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true.  To illustrate, if you were weighing the evidence on a scale, and the scale tilted in favor of the person with the burden, then that person has proven his or her element or claim by a preponderance of the evidence.

In determining whether any fact in issue has been proven by a preponderance of the evidence, the jury may unless otherwise instructed consider the testimony of all the witnesses, regardless of who called them, and all the exhibits received in evidence, regardless of who produced them.  It does not make any difference as to whether the exhibits are marked for Opponents or for Proponents.

The test is not which side brings the greater number of witnesses, or presents the greater quantity of evidence; but which witnesses, and which evidence, appeal to your minds as being most accurate, and otherwise trustworthy.

---

[16] *See* Trial Tr. June 21, 2017 at 1264, *Cobalt Boats, LLC v. Brunswick Corp.*, No. 2:15-cv-00021 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425); Trial Tr. November 17, 2014 at 1732–34, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

**COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 18**
**INFRINGEMENT**[17]

The Opponents stipulated that they satisfy every limitation of claims 1 and 33 of the '357 Patent, claim 5 of the '579 Patent, claims 2 and 10 of the '880 Patent, claim 5 of the '033 Patent, claim 4 of the '792 Patent, and claim 1 of the '084 Patent by making, using, selling, and offering for sale the accused products in the United States, and therefore infringement is not disputed for these claims. Opponents dispute infringement for only one claim: claim 20 of the '541 Patent. In order to prove infringement of claim 20 of the '541 Patent, Proponents must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Opponents made, used, sold, or offered for sale in the United States, a process, physical thing, or product that meets all of the requirements of a claim and did so without the permission of Proponents during the time the patents-in-suit have been in force. Growing a cell, seed, or plant is making that physical thing. You must compare the physical thing or product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met. Some of the asserted claims describe a process. In order to prove infringement of those claims, Proponents must prove that it is more likely than not that Opponents practiced each element or step of the claimed process in the United States. Any making, using, or offering for sale of the accused products in the United States can be deemed infringing even if such conduct was done for non-commercial or regulatory

---

[17] *See* Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.3.3.1a; Trial Tr. June 21, 2017 at 1266–67, *Cobalt Boats, LLC v. Brunswick Corp.*, No. 2:15-cv-00021 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425); Trial Tr. November 17, 2014 at 1733–35, 1740–41, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

purposes.[18]   The absence of commercial sales of the accused products is not a defense to infringement.[19]

---

[18] *Madey v. Duke Univ.*, 307 F.3d 1351, 1362 (Fed. Cir. 2002) ("Our precedent clearly does not immunize use that is in any way commercial in nature.  Similarly, our precedent does not immunize any conduct that is in keeping with the alleged infringer's legitimate business, regardless of commercial implications. For example, major research universities, such as Duke, often sanction and fund research projects with arguably no commercial application whatsoever.  However, these projects unmistakably further the institution's legitimate business objectives, including educating and enlightening students and faculty participating in these projects.  These projects also serve, for example, to increase the status of the institution and lure lucrative research grants, students and faculty.  In short, regardless of whether a particular institution or entity is engaged in an endeavor for commercial gain, so long as the act is in furtherance of the alleged infringer's legitimate business and is not solely for amusement, to satisfy idle curiosity, or for strictly philosophical inquiry, the act does not qualify for the very narrow and strictly limited experimental use defense. Moreover, the profit or non-profit status of the user is not determinative.").

[19] 35 U.S.C. § 271(a); *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1349 (Fed. Cir. 2000) (unsuccessful commercialization "does not confer infringement immunity").

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 19
### WILLFUL INFRINGEMENT[20]

In this case, Proponents content both that Opponents infringed and, further, that Opponents infringed willfully.  If you have decided that Opponents have infringed, you must got on and address the additional issue of whether or not this infringement was willful.  Willfulness requires you to determine by clear and convincing evidence that Opponents acted recklessly.  You may not determine that the infringement was willful just because Opponents knew of the patents-in-suit and infringed them.  Instead, willful infringement is reserved for egregious behavior, such as where the infringement is malicious, deliberate, consciously wrongful, and/or done in bad faith.

To determine whether Opponents acted willful, consider all the facts.  These may include, but not limited, to:

1.      Whether or not Opponents acted consistently with the standards of behavior for their industry;

2.      Whether or not Opponents intentionally copied a product of Proponents that is covered by the patents-in-suit;

3.      Whether or not Opponents reasonably believed they did not infringe or that the patent was valid;

4.      Whether or not Opponents made a good-faith effort to avoid infringing the patents-in-suit, for example, whether Opponents attempted to design around the patents-in-suit; and

5.      Whether or not Opponents tried to cover up their infringement.

---

[20]  *See* Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.3.3.10; Trial Tr. June 21, 2017 at 1270–71, *Cobalt Boats, LLC v. Brunswick Corp.*, No. 2:15-cv-00021 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425).

**COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 20**
**NO COMPARISON OF ACCUSED PRODUCTS WITH PATENT OWNERS'**
**PRODUCTS FOR INFRINGEMENT**[21]

To date, you have heard and seen significant evidence in this case.  This evidence has included, at times, a comparison of Opponents' accused plants, seeds and oils to Nuseed's Nutriterra and Aquaterra products.  As I have previously instructed you, sometimes evidence in a case can be considered for certain purposes, but not for others.  That is true with regard to a comparison of the parties' respective products.

One of the issues that you are considering in this case is whether Opponents have infringed the patents-in-suit.  As I have previously instructed you, when considering whether Opponents infringed the patents-in-suit, it is improper to make that determination by comparing Opponents' accused products to Nuseed's Nutriterra and Aquaterra products.  Instead, you must focus on a comparison of Opponents' accused products with the asserted claims of the patents-in-suit.

---

[21] *See* Trial Tr. June 21, 2017 at 1257, *Cobalt Boats, LLC v. Brunswick Corp.*, No. 2:15-cv-00021 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425).

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 21
### CONTINUATION PATENT APPLICATIONS[22]

An inventor may file continuation patent applications.[23]  A continuation patent application is an application that claims priority to an earlier-filed patent application, which is referred to as the "original" patent application or the "parent" patent application.[24]  Continuation patent applications must share the same specification, as well as inventors, as the original patent application.[25]  Thus, continuation patent applications receive the benefit of the invention date of the original patent application, and any new claims must be supported by the specification from the original patent application.[26]  Any patent that ultimately issues from a continuation patent application is subject to the same period of patent protection as the patent that issues from the

---

[22] *See Kingsdown Medical Consultants, Ltd. v. Hollister, Inc*., 863 F.2d 867, 874 (Fed. Cir. 1988) ("there is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application.").

[23] 35 U.S.C. §§ 120, 132; 37 C.F.R. § 153.

[24] 35 U.S.C. § 120

[25] *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1337 (Fed. Cir. 2006) ("The patents are continuations or divisionals of a common parent application and therefore necessarily have almost identical specifications.  Nothing about a continuation or divisional patent makes it inherently more likely to fail the written description requirement or changes the burden of proof with respect to proving invalidity.")

[26] *Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1358 (Fed. Cir. 2014) ("Typically, if an applicant files a patent application disclosing and claiming one invention and later realizes that the specification discloses a second or broader invention, he may seek coverage of those additional claims pursuant to 35 U.S.C. § 120, which allows for continuing applications to claim the priority date of earlier applications. One type of continuing application is a continuation application.  A continuation application is a second application for the same invention claimed in a prior nonprovisional application and filed before the original prior application becomes abandoned or patented. . . .  When an applicant seeks to add new claims pursuant to a continuation or divisional application, the statute explicitly states that the original specification provides adequate support for the new claims if the original specification satisfies the § 112(a) written description requirement for the new claims." (quotations and citations omitted)).

original patent application.[27]

There is nothing improper, illegal, or inequitable about filing a continuation patent application in order to obtain the right to exclude a competitor's product from the market, or to amend or insert claims intended to cover a competitor's product that the applicant or its attorney has learned about during the prosecution of a patent application.[28]  You should disregard any argument or suggestion that Proponents acted improperly, illegally, or inequitably in seeking patent protection that would cover products by BASF or Cargill.

---

[27]  *See* 35 U.S.C. § 120; *Medinol Ltd. v. Cordis Corp.*, 15 F. Supp. 3d 389, 403 (S.D.N.Y. 2014) ("Section 120 of Title 35 of the United States Code allows a patentee to submit a continuation application that will receive the same priority date as the original patent application but can include new claims.  A continuation application will not extend the term of the patent.").

[28] *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988) ("[T]here is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application.")

**COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 22**
**VALIDITY GENERALLY**[29]

I will now instruct you on the rules that you must follow in deciding whether or not Opponents have proven that any of the asserted claims of the patents-in-suit are invalid.  To prove that any asserted claim of any of the patents-in-suit is invalid, Opponents must persuade you by clear and convincing evidence, i.e you must be left with a clear conviction that the claim is invalid.

---

[29] *See* Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.4.4.1.

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 23
### A PERSON OF ORDINARY SKILL IN THE ART[30]

As you will hear, some of the standards for validity require you to analyze the patents from the perspective of a person of ordinary skill in the art.  In deciding what the level of ordinary skill in the field of the asserted patents is, you should consider all of the evidence introduced at trial, including, but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

---

[30]  Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.4.3.4.3c(i); Trial Tr. November 17, 2014 at 1730, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 24
### PRIOR ART[31]

Under the patent laws, one is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before. That which came before the asserted patents is referred to as the "prior art." Opponents presented evidence about the three prior art references below.

| Prior Art Reference |
|---|
| Frédéric Domergue, et al., *Acyl Carriers Used as Substrates by the Desaturases and Elongases Involved in Very Long-chain Polyunsaturated Fatty Acids Biosynthesis Reconstituted in Yeast*, 278(37) J. Biol. Chem. 35115-35126 (2003) ("Domergue 2003") |
| Production of Very Long Chain Polyunsaturated Fatty Acids in Oilseed Plants, International Patent Pub. No. WO 2004/071467 ("Kinney 2004") |
| Olga V. Sayanova and Jonathan A. Napier, Eicosapentaenoic acid: biosynthetic routes and the potential for synthesis in transgenic plants, 65 Phytochemistry 65 147-158 (2004) ("Sayanova 2004") |

Prior art to all of the patents-in-suit may include items that were publicly known or that had been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention. To be prior art, the item or reference must have been made, known, used, published, or patented either before the invention was made or more than one year before the filing date of the patent application. However, such prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of the invention.

In determining whether or not an asserted claim of any of the patents-in-suit is invalid, you must determine the scope and content of the prior art at the time the invention was made. The time the invention was made is called the "date of invention." I will now explain to you how to determine this date.

---

[31]Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.4.3a-1, 4.3a-2 (July 2016); Trial Tr. November 17, 2014 at 1752, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

The date of invention is either when the invention was reduced to practice or when conceived, provided the inventor was diligent in reducing the invention to practice.  Diligence means working continuously, though not necessarily every day.  Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work.  Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work.  Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation.  This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person.  But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea.  Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

A claimed invention is "reduced to practice" when it has actually been constructed, used, or tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application.  An invention may also be reduced to practice even if the inventor has not made or tested a prototype of the invention, if it has been fully described in a filed patent application.

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 25
### OBVIOUSNESS[32]

Opponents contend that some of the asserted claims of the patents-in-suit are invalid as

being obvious.  They contend that the following asserted claims are rendered obvious by the

following combinations of prior art references:

| Asserted Claims | Combinations of Prior Art References |
| --- | --- |
| Claim 1 of the '357 Patent | Sayanova 2004, Domergue 2003, Kinney 2004 |
| Claim 33 of the '357 Patent | Sayanova 2004, Domergue 2003, Kinney 2004 |
| Claim 5 of the '579 Patent | Sayanova 2004, Domergue 2003, Kinney 2004 |
| Claim 2 of the '880 Patent | Sayanova 2004, Domergue 2003, Kinney 2004 |
| Claim 10 of the '880 Patent | Sayanova 2004, Domergue 2003, Kinney 2004 |
| Claim 5 of the '033 Patent | Sayanova 2004, Domergue 2003, Kinney 2004 |
| Claim 4 of the '792 Patent | Sayanova 2004, Kinney 2004, Domergue 2003 |

Even though an invention may not have been identically disclosed or described before it

was made by an inventor, the invention may have been obvious to a person of ordinary skill in the

---

[32] Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.4.3c (July 2016); Trial Tr. November 17, 2014 at 1746–52, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474); *In re Efthymiopoulos*, 839 F.3d 1375, 1380 (Fed. Cir. 2016) ("However, in the unpredictable arts such as medicinal treatment, for a method to be obvious to try, there must be some suggestion in the prior art that the method would have a reasonable likelihood of success."); *Bayer Schering Pharma AG v. Barr Labs., Inc.*, 575 F.3d 1341, 1347 (Fed. Cir. 2009) ("First, an invention would not have been obvious to try when the inventor would have had to try all possibilities in a field unreduced by direction of the prior art.  When 'what would have been "obvious to try" would have been to vary all parameters or try each of numerous possible choices until one possibly arrived at a successful result, where the prior art gave either no indication of which parameters were critical or no direction as to which of many possible choices is likely to be successful' an invention would not have been obvious.  This is another way to express the *KSR* prong requiring the field of search to be among a 'finite number of identified' solutions.  It is also consistent with our interpretation that *KSR* requires the number of options to be 'small or easily traversed.'  Second, an invention is not obvious to try where vague prior art does not guide an inventor toward a particular solution.  A finding of obviousness would not obtain where 'what was "obvious to try" was to explore a new technology or general approach that seemed to be a promising field of experimentation, where the prior art gave only general guidance as to the particular form of the claimed invention or how to achieve it.'  This expresses the same idea as the *KSR* requirement that the identified solutions be 'predictable.'"); *Regents of Univ. of California v. Broad Inst., Inc.*, 903 F.3d 1286, 1295–96 (Fed. Cir. 2018); *Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1460 (Fed. Cir. 1984).

field of technology of the patents at the time the inventions were made.

Opponents may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of technology of the patents that someone would have had at the time the invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art.  In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of the technology to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find that the prior art rendered the invention obvious, you must find that the prior art provided a reasonable expectation

of success. Obvious to try is not sufficient in unpredictable technologies.  Obviousness requires more than a mere showing that the prior art includes separate references covering each separate limitation in a claim.  Most, if not all, inventions rely on building blocks of prior art.

In determining whether the claimed invention was obvious, consider each claim separately, and consider only what was known at the time of the invention.  Do not use hindsight, i.e., consider only what was known at the time of the invention.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on the obviousness or not of the claimed invention, such as:

1.      Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

2.      whether the invention satisfied a long-felt need;

3.      whether others had tried and failed to make the invention;

4.      whether others invented the invention at roughly the same time;

5.      whether others copied the invention;

6.      whether there were changes or related technologies or market needs contemporaneous with the invention;

7.      whether the invention achieved unexpected results;

8.      whether others in the field praised the invention;

9.      whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

10.     whether others sought or obtained rights to the patent from the patent holder; and

11.     whether the inventor proceeded contrary to accepted wisdom in the field.

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 26
### WRITTEN DESCRIPTION[33]

The patent law contains certain requirements for the part of the patent called the specification. Proponents contend that each of the asserted claims of CSIRO's patents are invalid because the specifications of these patents do not contain an adequate written description of the invention. To succeed, Opponents must show by clear and convincing evidence that the specifications of the patents fail to meet the law's requirements for written description of the invention. In the patent application process, the applicant may keep the originally filed claims, or change the claims between the time the patent application is first filed and the time a patent is issued. An applicant may amend the claims or add new claims. These changes may narrow or broaden the scope of the claims. The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed. The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application. The full scope of

---

[33] *See* Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.4.2.a; Final Jury Instructions at 13–15, *Amgen Inc. v. Sanofi*, No. 14-cv-01317-RGA (D. Del. 2019) (Dkt. No. 812); *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1350–52 (Fed. Cir. 2010) (en banc).

a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application.

The written description requirement does not require Proponents to prove to the skilled reader that the invention works, or how to make it work, which is an enablement issue.[34]

---

[34] *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1191 (Fed. Cir. 2014) (emphasis added) (citing *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010) (en banc)).

**COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 27**[35]
**BREACH OF CONTRACT**[36]

BASF contends that CSIRO breached a contract between them, the Materials Transfer and Evaluation Agreement, which has also been referred to throughout the trial as the "MTEA." The terms of the contract are as follows:

Joint Results are Results with respect to Joint Transformed Lines and Joint New Materials.

New Materials means any genes, promoters, and constructs of a Party identified in Schedule A and includes copies, replicates, progeny, or unmodified derivatives of the original Material. Materials include materials subsequently provided by a Party and Specified at the time of supply as being covered by the Agreement.

In order to succeed in their ownership claim, BASF must show by a preponderance of the evidence that there was a legally enforceable obligation between CSIRO and BASF; that CSIRO breached that obligation; that BASF is entitled to a remedy as a result; and that the appropriate remedy is co-ownership of CSIRO's patents.[37]

CSIRO denies it breached the contract. CSIRO also claims and has the burden of proving that BASF failed to bring its breach of contract claims within the statute of limitations of five years after the breach occurred.[38]

---

[35] As set forth in Counterclaimants' MSJ and MILs, BASF's claim of ownership is not an equitable claim to be decided by the Court, not the jury. By proposing an instruction herein, Counterclaimants do not waive any such argument.

[36] *Illinois Pattern Jury Instructions – Civil*, 700.00 CONTRACTS at 700.01.

[37] *FFP Holdings LLC v. Vitafoam Inc.*, 576 F. App'x 234, 235 (4th Cir. 2014) (citing to *Cent. Tel. Co. of Va. v. Sprint Commc'n Co. of Va.*, 715 F.3d 501, 517 (4th Cir.2013)) ("To succeed on a breach of contract claim, the plaintiff must prove by a preponderance of the evidence that a legally enforceable obligation existed between it and the defendant; that the defendant breached that obligation; and that the plaintiff incurred damages as a result of the breach.")

[38] Va. Code § 8.01-246(2).

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 28
## UNCLEAN HANDS [ADVISORY]

The owner of a patent may be barred from enforcing the patent against an infringer where the owner of the patent acts or acted inequitably, unfairly, or deceitfully towards the infringer or the Court in a way that has immediate and necessary relation to the relief that the patent holder seeks in a lawsuit. This is referred to as "unclean hands," and it is a defense that BASF contends precludes any recovery by CSIRO in this lawsuit.

You must consider and weigh all the facts and circumstances to determine whether you believe that, on balance, CSIRO acted in such an unfair way towards BASF or the Court in the matters relating to the controversy between CSIRO and BASF that, in fairness, CSIRO should be denied the relief it seeks in this lawsuit. BASF must prove unclean hands by a preponderance of the evidence.[39]

In this case, to prove their defense of unclean hands, BASF and Cargill must show, by a preponderance of the evidence, that CSIRO's unfair, inequitable, or deceitful misconduct enhanced CSIRO's position when it applied for the Asserted Claims and, thus, has an immediate and necessary relation to the enforcement of the Asserted Claims.[40]  The unclean hands defense typically limited to instances where the Patent Owner committed bad acts before the PTO to obtain the patent and bad acts before a court when enforcing a Patent.[41]

---

[39] Fed. Cir. Bar Model Instruction at B.5.5
[40] *Gilead Scis., Inc. v. Merck & CO.,* 888 F. 3d 1231, 1240 (Fed. Cir. 2018) (citations omitted).
[41] *DR Sys., Inc. v. Eastman Kodak Co.*, No. 08-CV-0669 H (BLM), 2009 WL 10671318, at *6 (S.D. Cal. Nov. 17, 2009),

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 29
### DELIBERATIONS GENERALLY[42]

You must follow these rules while deliberating and returning your verdict:

First, when you go to the jury room, you must select a foreperson.  The foreperson will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury and try to reach agreement.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should.  But do not make a decision simply because other jurors think it is right, or simply to reach a verdict.  Remember at all times that you are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors.  I will respond as soon as possible either in writing or orally in open court.  Remember that you should not tell anyone—including me—how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law that I have given to you in these instructions.  The verdict must be unanimous.  Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

---

[42]  *See* Trial Tr. June 21, 2017 at 1362–63, *Cobalt Boats, LLC v. Brunswick Corp.*, No. 2:15-cv-00021 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425); Trial Tr. November 17, 2014 at 1823–24, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

Finally, the verdict form is simply the written notice of the decision that you reach in this case.  You will take this form to the jury room, and when each of you has agreed on the verdict, your foreperson will fill in the form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.

## COUNTERCLAIMANTS' PROPOSED JURY INSTRUCTION NO. 30
## QUESTIONS DURING DELIBERATIONS[43]

If it becomes necessary during your deliberations to communicate with me, you may send a note by a bailiff, signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me by any means other than a signed writing. I will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open court.

From the oath about to be taken by the bailiffs you will note that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

Bear in mind also that you are never to reveal to any person—not even to me—how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict.

---

[43] *See* Trial Tr. June 21, 2017 at 1362, *Cobalt Boats, LLC v. Brunswick Corp.*, No. 2:15-cv-00021 (E.D. Va. 2017) (J. Morgan Final Jury Instructions) (Dkt. No. 425); Trial Tr. November 17, 2014 at 1824, *Lifenet Health v. Lifecell Corp.*, No. 2:13-cv-00486 (E.D. Va. 2014) (J. Morgan Final Jury Instructions) (Dkt. No. 474).

DATED:  October 28, 2019                Respectfully submitted,

_/s/ Richard Ottinger_____
Richard Ottinger (Virginia Bar #38842)
rottinger@vanblacklaw.com
Vandeventer Black LLP
101 West Main Street
500 World Trade Center
Norfolk, VA 23510
Telephone:  (757) 446-8600
Facsimile:  (757) 446-8670

Michael Ng (Admitted *Pro Hac Vice*)
michael.ng@kobrekim.com
Daniel Zaheer (Admitted *Pro Hac Vice*)
daniel.zaheer@kobrekim.com
Michael M. Rosen (Admitted *Pro Hac Vice*)
michael.rosen@kobrekim.com
Hartley M.K. West (Admitted *Pro Hac Vice*)
hartley.west@kobrekim.com
Kobre & Kim LLP
150 California Street, 19th Floor
San Francisco, California 94111
Telephone:  (415) 582-4800
Facsimile:  (415) 582-4811

Rebecca G. Mangold (Admitted *Pro Hac Vice*)
Rebecca.mangold@kobrekim.com
Jonathan E. Barbee (Admitted *Pro Hac Vice*)
jonathan.barbee@kobrekim.com
Kobre & Kim LLP
800 3rd Ave
New York, NY 10022
Telephone:  (212) 488-1200
Facsimile:  (212) 488-1220

Rebecca P. Cole (Admitted *Pro Hac Vice*)
rebecca.cole@kobrekim.com
Hugham Chan (Admitted *Pro Hac Vice*)
hugham.chan@kobrekim.com
Kobre & Kim LLP
1919 M Street, NW
Washington, DC 20036
Telephone:  (202) 664-1900
Facsimile:  (202) 664-1920

48

Matthew I. Menchel (*Pro Hac Vice* pending)
matthew.menchel@kobrekim.com
Laura M. Gonzalez (Admitted *Pro Hac Vice*)
laura.gonzalez@kobrekim.com
Kobre & Kim LLP
201 South Biscayne Boulevard
Suite 1900
Miami, FL 33131
Telephone:  (305) 967-6100
Facsimile:  (305) 967-6120

*Attorneys for Counterclaimant Commonwealth
Scientific and Industrial Research Organisation*

Miranda Jones (Admitted *Pro Hac Vice*)
mirandajones@porterhedges.com
Andrew B. Raber (Admitted *Pro Hac Vice*)
araber@porterhedges.com
Megan Mon-Ting Luh (Admitted *Pro Hac Vice*)
mluh@porterhedges.com
Jonna N. Summers
jsummers@porterhedges.com
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, TX 77002
Telephone:  (713) 226-6000
Facsimile:  (713) 226-1331

*Attorneys for Counterclaimant Grains Research
and Development Corporation*

Lawrence M. Sung (Admitted *Pro Hac Vice*)
lsung@wileyrein.com
Teresa Summers (Admitted *Pro Hac Vice*)
tsummers@wileyrein.com
Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006
Telephone:  (202) 719-7000
Facsimile:  (202) 719-7049

*Attorney for Counterclaimant Nuseed Pty Ltd.*

## <u>Certificate of Service</u>

I hereby certify that on October 28, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Richard Ottinger*
Richard Ottinger
Virginia Bar Number: 38842
rottinger@vanblacklaw.com
Vandeventer Black LLP
101 West Main Street
500 World Trade Center
Norfolk, VA 23510
Telephone: (757) 446-8600
Facsimile: (757) 446-8670
*Counsel for Defendant and Counterclaimants*