## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Norfolk Division

| | | |
|---|---|---|
| BASF PLANT SCIENCE, LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMONWEALTH SCIENTIFIC AND | ) | |
| INDUSTRIAL RESEARCH | ) | |
| ORGANISATION, | ) | |
| | ) | |
| Defendant. | ) | C.A. No. 2:17-CV-503-HCM |
| | ) | |
| COMMONWEALTH SCIENTIFIC AND | ) | JURY TRIAL DEMANDED |
| INDUSTRIAL RESEARCH | ) | |
| ORGANISATION, GRAINS RESEARCH | ) | |
| AND DEVELOPMENT CORP., AND | ) | |
| NUSEED PTY LTD., | ) | |
| | ) | |
| Plaintiffs-Counterclaimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BASF PLANT SCIENCE, LP, AND | ) | |
| CARGILL, INCORPORATED, | ) | |
| | ) | |
| Defendants- | ) | |
| Counterdefendants, | ) | |
| | ) | |
| BASF PLANT SCIENCE GMBH, | ) | |
| | ) | |
| Counter-Counterclaimant. | ) | |

## PROPONENTS' MEMORANDUM IN SUPPORT OF MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND A NEW TRIAL AS TO JURY ISSUES NOT DECIDED BY VERDICT UNDER FED. R. CIV. P. 50(B) AND 59

Commonwealth Scientific and Industrial Research Organisation ("CSIRO"), Grains Research and Development Corporation ("GRDC"), and Nuseed Pty. Ltd. ("Nuseed") (collectively, "Proponents") respectfully request that the Court: enter judgment as a matter of law or grant a new trial in favor of Proponents on BASF Plaint Science LP's ("BASF") and Cargill, Incorporated's ("Cargill") (collectively, "Opponents") claim of ownership of U.S. Patent No. 9,994,792 ("'792 Patent" or "Group B patent") under the Materials Transfer and Evaluation Agreement ("MTEA"), and grant a new trial as to willful infringement of, and a reasonable royalty for past infringement of, *at least* U.S. Patent Nos. 9,951,357 ("'357 Patent"); 9,926,579 ("'579 Patent."); 9,994,880 ("'880 Patent"); and 9,970,033 ("'033 Patent") (collectively, "Group A patents"), the '792 Patent and U.S. Patent No. 9,931,541 ("'541 Patent" or "Group D patent").[1]

The Court erred in allowing Opponents to present their MTEA claim to the jury because (among other reasons) that *contract* claim is barred by the applicable statute of limitations for breach claims and also because the contract provides that the exclusive jurisdiction for adjudication

---

[1]  This motion and memorandum are being filed out of an abundance of caution and only address issues for which it may be argued that the post-trial motion deadline is triggered by the date of the jury's discharge.  *See* Fed. R. Civ. P. 50(b) ("No later than 28 days after the entry of judgment— *or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged*—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." (emphasis added)); *see also* Fed. R. Civ. P. 6(b)(2) ("A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b).").  For the sake of clarity, by including certain arguments in this motion, Proponents do not concede that a post-trial motion is necessary for preservation of such arguments or that the deadline for post-trial motions with regard to such arguments is 28 days after discharge of the jury.  Importantly, Proponents will be filing additional post-trial motions and memoranda on issues (including issues related to the matters raised here, such as BASF's co-ownership claim concerning the '792 Patent) for which it is beyond dispute that the post-trial motion deadline is triggered by the date that the Court enters a judgment on the jury's verdict.  *See, e.g.*, Fed. R. Civ. P. 50(b); Fed. R. Civ. P. 59(b).  To date, the Court has not yet entered judgment and therefore the deadline for such motions has not yet been triggered.

of disputes concerning the contract is the courts of the Australian Capital Territory.  A judgment finding that BASF is not a co-owner of the '792 Patent should thus be entered.

In addition, the Court also erred in refusing to submit the question of willful infringement to the jury, which constituted a *sua sponte* judgment as a matter of law as to this issue for which Proponents now seek a new trial.  There was sufficient evidence for the jury to consider and find that Opponents had knowledge of the infringed patents, and notwithstanding such knowledge, engaged in infringing conduct.  Similarly, the Court erred in precluding Proponents from presenting evidence concerning a reasonable royalty to the jury for past infringement, and by ultimately dismissing the jury before the conclusion of the damages phase and before the jury rendered a verdict on a reasonable royalty for past infringement.  Given that the jury found past infringement, Proponents were entitled to have the jury enter a verdict on past damages of no less than a reasonable royalty.  But Proponents' *Georgia Pacific* evidence of a reasonable royalty for past infringement was precluded and the jury was discharged before hearing Proponents' evidence as to the proper reasonable royalty.   This left Proponents with no reasonable royalty for Opponents' past infringement.   Accordingly, for the reasons set forth in more detail below, the Court should grant judgment as a matter of law and/or a new trial as set out herein.

## I.   BACKGROUND

BASF initially filed a declaratory judgment action involving some of CSIRO's patents in April 2017 in the District of Delaware.  *See* Complaint at 1–28, *BASF Plant Science, LP v. Nuseed Americas Inc.*, 17-CV-241-MAK (D. Del. Apr. 13, 2017).  In its original complaint, BASF did not allege that it owned any of those patents (all of which were litigated at some point in the present action) as a result of any agreement between BASF and any other party.  *See id.*  That action was ultimately dismissed for lack of declaratory judgment jurisdiction in August 2017.  *See BASF Plant*

*Sci., LP v. Nuseed Americas Inc.*, No. 17-CV-421, 2017 WL 3573811, at *3–7 (D. Del. Aug. 17, 2017).

In September 2017, BASF initiated the present declaratory judgment action against Proponents. *See, e.g.*, Complaint (Dkt. No. 1) at 1–33. In doing so, BASF again did not allege that it owned any of CSIRO's patents. *See id.* It was not until January 2019 that BASF raised a non-infringement defense styled as a breach-of-contract claim under a Materials Transfer and Evaluation Agreement ("MTEA") between BASF and CSIRO. *See* BASF's Answer and Amended Affirmative Defenses to Counterclaimants' Amended Counterclaims and BASF's Amended Counterclaims Against Counterclaimants (Dkt. No. 165) at 46, 55–62. Proponents then filed a motion to dismiss BASF's MTEA claim for *forum non conveniens* on the basis that the MTEA contained an explicit forum-selection clause requiring the MTEA claim to be brought in the Australian Central Territory ("ACT"). *See* April 10, 2019 Minutes of Proceedings in Open Court (Dkt. No. 258); Counterclaimants' Motion to Dismiss BASF's Amended Counterclaims Against Counterclaimants for Breach of Forum Selection Clause (Dkt. No. 177). The motion was denied.

As this action progressed towards trial, Proponents' filed, *inter alia*, a summary judgment motion seeking to bar the MTEA claim from adjudication at trial because it was untimely as a matter of law under the applicable statute of limitations. *See* Counterclaimants' Memorandum in Support of Motion for Summary Judgment (Dkt. No. 453) at 29; Counterclaimants' Motion for Summary Judgment (Dkt. No. 448). Proponents maintained this argument in the pretrial order. *See* Proposed Final Pretrial Order (Dkt. No. 682) at 55 ("CSIRO, Nuseed, and GRDC have moved for summary judgment with regard to the Inventorship and Ownership Counterclaims. Dkt. No. 448."). The Court did not rule on this motion prior to the start of trial.

The Court held a pre-trial conference on October 3, 2019.  During that conference, it bifurcated trial into liability and damages (with liability further bifurcated into infringement and validity phases).  Oct. 3, 2019 Pre-Trial Hr'g Tr. at 8:2–9:11.  For purposes of trial, the patents-in-suit were classified into the groups below.

| Groups | U.S. Patent Nos. |
|:------:|:----------------:|
| A | '357 Patent; '579 Patent; '880 Patent; and '033 Patent" |
| B | '792 Patent |
| C | '346 Patent |
| D | '541 Patent |
| E | 10,125,084 ("'084 Patent") |

Opponents stipulated to infringement of the Group A, B and E patents before trial.  CX-1884 (Amended Stipulation (Dkt. No. 692)).

On October 16, 2019, this Court began a 16-day trial.  During the course of trial, Proponents sought judgment as a matter of law under Fed. R. Civ. P. 50(a), *inter alia*, that any applicable statute of limitation barred the MTEA claim.  *See* Proponents' Supplemental Memorandum in Support of [Their] Motion for Judgment as a Matter of Law to Address Additional Bases for Relief Under Fed. R. Civ. Proc. 50 (Dkt. No. 783) at 1.  Additionally, the Court decided, over Proponents' objections, *inter alia*, that: (1) the jury would not be instructed on the statute of limitations instruction with respect to the MTEA claims and those claims would be submitted to the jury for a verdict on liability (effectively denying Proponents' summary judgment and JMOL motions); (2) the question of willful infringement would not be submitted to the jury; and (3) there would be no jury trial as to a reasonable royalty for past infringement during the damages phase.  *See, e.g.*, Trial Tr. at 1650:9–18, 1821:22–1827:11, 1926:12–1928:11, 1930:9–1933:16, 2238:19–2255:12.

For purposes of the current motion, the jury found, in relevant part, that Opponents infringed the Group A, B, D, and E patents and that Opponents owned the Group B patent. *See* Jury Verdict Form (Dkt. No. 788) at 2, 5.

Proponents now seek judgment as a matter of law and/or a new trial based on the aforementioned rulings of this Court.

## II.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 50(a), a court may grant a motion for judgment as a matter of law ("JMOL") during a jury trial after a party has been fully heard on an issue only if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). Before doing so, the court must examine the evidence in the light most favorable to the non-moving party and afford it "the benefit of every reasonable inference that could be drawn from the evidence, neither weighing the evidence nor assessing its credibility." *Sales v. Grant*, 158 F.3d 768, 775 (4th Cir. 1998). If "reasonable minds could differ as to the conclusion to be drawn from the evidence," then a Rule 50(a) JMOL is improper. *Id.* If the court improperly grants a Rule 50(a) motion, a new trial must be had on the issue in which it granted judgment as a matter of law. *See, e.g.*, *id.* at 770, 775–80, 781 (remanding for new trial where Rule 50(a) motion was granted erroneously); *Lawley v. Northam*, No. 10-CV-1074 (ELH), 2013 WL 1786484, at *10 (D. Md. Apr. 24, 2013) (noting that remedy for granting of improper Rule 50(a) motion is "holding a new trial"); *see also* § 2533 Motion for Judgment as a Matter of Law Before Submission, Wright & Miller (3d ed.) ("If judgment as a matter of law is granted and the appellate court holds that the evidence in fact was sufficient to go to the jury, an entire new trial must be had.").

Under Federal Rule of Civil Procedure 50(b), a party must renew its Rule 50(a) motion or

file a motion seeking a new trial under Rule 59(a), if the basis of the motion relates to "a jury issue not decided by a verdict, no later than 28 days after the jury was discharged . . . ." Fed R. Civ. 50(b). And under Federal Rule of Civil Procedure 59(a), the court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a). This would include an erroneous grant of Rule 50(a) relief. *See supra*. Lastly, in this case the law of the Fourth Circuit controls matters of procedure that do not implicate substantive patent law, including Rule 50 and 59 motions. *See, e.g.*, *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1106 (Fed. Cir. 2003).

## III.   ARGUMENT

### A.   The Court Should Grant Judgment as a Matter of Law That the Breach-of-Contract Claim Was Barred by the Statute of Limitations or a New Trial on the Claim.

Proponents respectfully submit this motion under Federal Rule of Civil Procedure 50(b) to renew their Supplemental Motion for Judgment as a Matter of Law to Address Additional Bases for Relief Under Fed. R. Civ. Proc. 50 (Dkt. No. 783), which Proponents filed on October 31, 2019, as well as under Federal Rule of Civil Procedure 59(a). In that motion, Proponents sought a judgment as a matter of law that, *inter alia*, BASF's breach-of-contract claim was barred by the applicable statute of limitations.

Proponents raised their statute of limitations defense in their Motion for Summary Judgment. *See* Counterclaimants' Memorandum in Support of Motion for Summary Judgment (Dkt. No. 453) at 29–30; Counterclaimants' Motion for Summary Judgment (Dkt. No. 448). As Proponents explained, the statute of limitations applicable to Opponents' breach-of-contract claim under the MTEA agreement is either "five years under Virginia law" or "six years under the law

of the Australian Capital Territory."[2] Counterclaimants' Memorandum in Support of Motion for Summary Judgment (Dkt. No. 453) at n.11. BASF first brought its breach-of-contract claims under the MTEA when it filed its Amended Counterclaims in January 2019, almost a decade after they accrued, in 2009 (when Proponents first filed patent applications that allegedly used information disclosed during the MTEA discussions). Because the limitation period has lapsed, BASF's co-ownership claims based on CSIRO's alleged breach of the MTEA are time-barred as a matter of law.

In opposing summary judgment based upon the statute of limitations, Opponents claimed that the statute had not run because "BASF does not allege that CSIRO breached the MTEA in 2009" because the agreement provides that ownership rights vest "immediately upon creation" and thus "BASF became a joint owner of the intellectual property created *during the BASF-CSIRO collaboration immediately upon its creation*." BASF/Cargill's Memorandum in Opposition to Counterclaimants' Motion for Summary Judgment (Dkt. No. 547) at 29 (emphasis added). In other words, BASF claims that there never was a breach of the agreement which triggered accrual of the statute of limitations. *Id.* During the pretrial motions hearing, BASF also contended that the statute of limitations accrued when Proponents asked BASF to take a license in 2016. September 24, 2019 Motions Hearing Tr. at 83:5–84:12.

During trial, however, BASF made two key decisions that undermined its earlier arguments. First, BASF dropped any claim based upon a co-inventorship theory and therefore

---

[2] The law of the Australian Capital Territory (ACT) is the law selected by the MTEA's choice-of-law clause. Chan Decl., Ex. 1 (JX-52 (MTEA) at CSI00106419 ("The Agreement is governed by the law in force in The Australian Capital Territory and the Parties submit to the exclusive jurisdiction of the courts of the Australian Capital Territory."). However, as there is no material difference in the law, there is no need for the Court to "resolve the choice-of-law question." *World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co.*, 783 F.3d 507, 514 (4th Cir. 2015). BASF has never suggested that law other than Virginia law or ACT law applies.

elected to proceed exclusively under a contract theory.  Trial Tr. at 1173:13–1174:1.  Second, BASF conceded that its MTEA claim *was* a breach-of-contract claim.  *Id.* at 1814:2–10; *see also id.* at 2105:13–16.  Indeed, as the Court repeatedly pointed out, the only coherent theory of recovery under the contract was a claim of breach.  *E.g.*, *id.* at 1478:16–19; 1812:7–11; 1814:2–10.

BASF's concession of the foundation for its opposition to summary judgment and/or judgment as a matter of law based upon statute of limitations is fatal to the viability of its MTEA claims.  Because co-inventorship has been dropped, BASF's prior argument regarding accrual—that the "key date for triggering" the statute of limitations for the MTEA was in October 2016, when Proponents "first attempted to enforce [the] patents"—is no longer viable.  September 24, 2019 Motions Hearing Tr. at 83:5–84:12.

When the proper focus is turned to the date of breach, it is plain that the claim accrued no later than 2009.  BASF itself has contended that it became the joint owner by operation of the contract of the intellectual property in question "during the BASF-CSIRO collaboration" in 2008 and 2009.  BASF/Cargill's Memorandum in Opposition to Counterclaimants' Motion for Summary Judgment (Dkt. No. 547) at 29.  The MTEA's term began on March 1, 2008, and the "Joint Results" (the information that was allegedly used in breach of the contract) were shared in August 2009.  Chan Decl., Ex. 1 (JX-52 (MTEA) at CSI00106410–11)[3]; Chan Decl., Ex. 2 (PX-222 (Presentation entitled: "Joint program on PUFA CSIRO – BPS")).  Under BASF's theory of breach, the jointly owned material was misused (and therefore there was a breach) when CSIRO filed applications seeking claims including a *Brassica napus* limitation in July 2009.  *See, e.g.*,

---

[3]  All exhibits are attached to the Declaration of Hugham Chan in Support of Proponents' Motions for Judgment as a Matter of Law and a New Trial as to Jury Issues Not Decided by Verdict Under Fed. R. Civ. P. 50(b) and 59 ("Chan Decl.").

BASF's Answer and Amended Affirmative Defenses to Counterclaimants' Amended Counterclaims and BASF's Amended Counterclaims Against Counterclaimants (Dkt. No. 161) ¶ 51; Final Pretrial Order (Dkt. No. 682) at 43 (¶¶ 184–85); Trial Tr. at 102:1–10, 109:22–111:18, 707:9–22, 760:14–762:5; 874:22–875:3, 877:15–21, 879:13–880:16, 1199:6–1203:5; 2104:7–2105:18. Notably, the priority applications underlying the '792 Patent were filed in 2008 (provisional) and 2009 (non-provisional). Chan Decl., Ex. 3 (JX-12 ('792 Patent) at [60], [63]). The contract provides that the breach occurs upon the use of jointly owned property outside of the expressly authorized purposes identified in the agreement. Chan Decl., Ex. 1 (JX-52 (MTEA) § 6.5). As such, the alleged breach of the contract—i.e., CSIRO's use of allegedly co-owned materials—occurred no later than 2009, more than six years before the claims were first brought in January 2019. The claims are therefore barred as a matter of law. At the very least, a new trial should be granted so that a jury can apply the appropriate statute of limitations to any evidence about when Opponents' MTEA claim started to accrue. *See, e.g.*, *Bethel Inv. Co. v. City of Hampton*, 272 Va. 765, 770 (2006).

BASF has never contended that the statute of limitations would be tolled based upon its lack of knowledge of the breach. Nor could BASF so contend; even assuming that ignorance of the breach could toll the limitations period, BASF can claim no such ignorance because BASF concedes it has been aware of CSIRO's patent applications at least as early as 2010, approximately nine years before it brought the MTEA claim. *See* Supplemental Motion for Judgment as a Matter of Law to Address Additional Bases for Relief Under Fed. R. Civ. Proc. 50 (Dkt. No. 783); Trial Tr. at 1033:1–1037:10; 1072:6–1073:23, 1215:1–1216:22, 1218:8–1220:14. Accordingly, the Court should enter judgment that BASF's claim based upon an alleged breach of the MTEA is time-barred, and set aside the jury's verdict that BASF is a co-owner of the '792 Patent, or in the

alternative, a new trial should be granted so that a jury can decide whether Opponents brought their claim within the statute of limitations.

## B. The MTEA's Forum Selection Clause Required the MTEA Claim to Have Been Resolved in Australia and Not in the U.S.

Proponents respectfully seek judgment as a matter of law that Opponents' breach-of-contract claim under the MTEA should have been dismissed pursuant to the doctrine of *forum non conveniens* because the contract provides that the exclusive forum in which that dispute can be resolved is the courts of the Australian Capital Territory (ACT). *See* Motion to Dismiss BASF Plant Science GmbH's Amended Counterclaims Against Counterclaimants for Lack of Jurisdiction (Dkt. No. 177). Finding that the MTEA's forum selection clause did not survive termination (because it was not listed in the survival clause), and applying a traditional *forum non conveniens* analysis, the Court denied Proponents' motion to dismiss on this basis. May 7, 2019 Opinion and Order (Dkt. No. 278) at 13. Separately, the Court ruled that even if it applied the forum selection clause, the public interest would require adjudicating BASF's MTEA claims in the Eastern District of Virginia. *Id.* at 15. For the reasons explained below, Proponents respectfully submit that as a matter of law the appropriate forum for adjudicating the MTEA claim is Australia.

As Proponents explained in the briefing in support of their Motion to Dismiss, the consensus of courts in the United States and Australia is that procedural clauses such as forum selection clauses survive termination of a contract even if their survival is not expressly called out by the applicable survival clause. Counterclaimants' Reply in Support of [Their] Motion to Dismiss BASF Plant Science, LP's and BASF Plant Science GmbH's Amended Counterclaims Against Counterclaimants (Dkt. No. 193) at 4–5. Under both Australian and U.S. law, "neither termination nor cancellation [of an agreement] affect those terms that relate to the settlement of

10

disputes or choice of law or forum selection clauses." 13 *Corbin on Contracts* § 67.2 (2018). Further, as Proponents explained, "courts repeatedly have upheld the applicability of forum-selection clauses even where the contract expressly provides for the survival of certain enumerated provisions but not the forum-selection clause."[4] Counterclaimants' Reply in Support of [Their] Motion to Dismiss BASF Plant Science, LP's and BASF Plant Science GmbH's Amended Counterclaims Against Counterclaimants (Dkt. No. 193) at 5.

BASF cited a single, unpublished case from the Northern District of Texas, *TSI USA, LLC v. Uber Techs.*, Inc., No. 3:16-cv-2177-L, 2017 WL 106835 (N.D. Tex. Jan. 11, 2017), to support the opposite conclusion that a forum selection clause must be expressly included in a survival clause to survive termination. *Id.* Relying heavily on that same case—and the fact that the survival clause of the MTEA did not expressly mention the forum selection clause—the Court found that "the plain language of the survival clause compels a finding that the intent of the parties as expressed in the contract indicates that the choice of forum clause did not survive termination of the agreement." May 7, 2019 Opinion and Order (Dkt. No. 278) at 13. However, as Proponents explained, the *Uber* case cited by BASF is an outlier on the issue. *See, e.g., Strata Heights Intern. Corp. v. Petroleo Brasileiro, S.A.*, 67 F. App'x 247, 2003 WL 21145663, *7–8 (5th Cir. 2003); Counterclaimants' Reply in Support of [Their] Motion to Dismiss BASF Plant Science, LP's and BASF Plant Science GmbH's Amended Counterclaims Against Counterclaimants (Dkt. No. 193)

---

[4] *Sensify (US) Inc. v. Intelligent Telematics N. Am., Inc.*, No. 16-24069, 2017 WL 1541424, at *2 (S.D. Fla. Apr. 28, 2017); *accord Marcotte v. Micros Sys., Inc.*, No. C 14-01372 LB, 2014 WL 4477349, at *9 (N.D. Cal. Sept. 11, 2014); *TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517, 534 (E.D. Pa. 2010); *Versar, Inc. v. Ball*, No. CIV.A. 01–1302, 2001 WL 818354, at *2 (E.D. Pa. July 12, 2001); *Texas Source Group, Inc. v. CCH, Inc.*, 967 F. Supp. 234, 238 (S.D. Tex. 1997); *Allied Sound, Inc. v. Dukane Corp.*, 934 F. Supp. 272, 275 (M.D. Tenn. 1996); *Young Women's Christian Ass'n of the U.S. v. HMC Entm't, Inc.*, No. 91 Civ. 7943 (KMW), 1992 WL 279361, at *4 (S.D.N.Y. Sept. 25, 1992); *Advent Elecs., Inc. v. Samsung Semiconductor, Inc.*, 709 F. Supp. 843, 846 (N.D. Ill. 1989).

at 5.  Further, requiring parties to include all clauses intended to survive termination in a survival clause would lead to the absurd result of voiding a number of clauses vital to the protection of the parties' rights under the MTEA, which similarly were not included in the survival clause.[5]  May 7, 2019 Opinion and Order (Dkt. No. 278) at 5–6.  These include, for example, the "Survival" provision itself and the provision defining the term of the agreement (Clauses 2.1 and 11.4); the provision governing notices (Clause 12); the provision providing that the rights under the agreement may only be waived in writing (Clause 14.4); the provision providing that if any portion of the agreement is deemed unenforceable, then the remaining portions will be severed and still operative (Clause 14.5c); the entire-agreement clause (Clause 14.5a); and the clause requiring that each party "must do anything . . . that the other Party may reasonably require to give full effect to this Agreement" (Clause 14.3).  Chan Decl., Ex. 1 (JX-52 (MTEA) at CSI00106413, 106418–20).  It makes no sense to interpret the contract to eliminate these essential procedural provisions upon expiration.

The contract as a whole evinces an intent that disputes be tried in the exclusive forum identified therein.  Indeed, it would make no sense for the parties to decide that disputes concerning ownership of intellectual property be adjudicated exclusively in the ACT courts, but immediately upon expiration the disputes could be adjudicated anywhere in the world.  The contract's text and structure reflect that the parties envisioned that such disputes would not be brought during the brief term of the contract but instead would have to be brought afterwards.  For example, the contract

---

[5]   The Court also expressed its disbelief that for the "proposition that legal professionals negotiating what clauses would survive a contract's termination" would "omit the choice of forum clause, unless they did not intend that it survive."  May 7, 2019 Opinion and Order (Dkt. No. 278) at 13.  In fact, parties routinely choose to omit terms from a given clause—for example, as here, a procedural term from the survival clause of a contract—to avoid interpretation of such clauses "as an exhaustive statement of the parties' intention."  Carter on Contracts, Section 38-070.

envisions that if the parties enter into a long-term collaboration they would draft a superseding agreement.  *See* Chan Decl., Ex. 1 (JX-52 (MTEA) § 7).  That demonstrates that if the parties decided not to pursue a collaboration, the MTEA terms would govern the disposition and use of the materials, results and property created during the evaluation *after* the term ended and the agreement terminated.  In fact, the Agreement expressly provides that in the event that the parties did not enter into a long-term collaboration, they were required to confer regarding arrangements for accessing jointly owned property *after expiration* of the contract.  Chan Decl., Ex. 1 (JX-52 (MTEA) § 11.3(d)).  The agreement has numerous terms reflecting that the parties envisioned that numerous obligations could be breached (and therefore disputes would arise) after expiration.  *See, e.g.*, Chan Decl., Ex. 1 (JX-52 (MTEA) § 6.5 (restricting right to use jointly owned property outside of the evaluation) and 8.1 (restricting rights to use and disclose confidential information outside of the evaluation)).  As such, interpreting the exclusive jurisdiction clause to be limited to the contract's term would render that bargained-for provision functionally meaningless—a result foreclosed both by Australian and Virginia law.  Chan Decl., Ex. 4 (Expert Report of Justice Susan Crennan AC QC (Dkt. No. 484-4) ¶ 25) (contractual terms are to be construed "in the context afforded by a reading of the document as a whole"); *id.* ¶ 25 ("A commercial contract is to be construed so as to avoid it making commercial nonsense or working commercial inconvenience.")); Chan Decl., Ex. 5 (Expert Report of Richard Cobden AC (Dkt. No. 606-4) ¶ 43) ("An agreement is to be construed as a whole . . . and the words of every clause must if possible be construed so as to render them all harmonious one with another"); *see also e.g.*, *CoreTell Virginia, LLC v. Verizon Virginia LLC*, 752 F.3d 364, 370 (4th Cir. 2014) ("the cardinal principle of contract construction [is]…that a document should be read to give effect to all its provisions" (citations and quotations omitted)).

Separately, the Court held that it would deny CSIRO's motion even if it applied the forum selection clause because the "public interests would outweigh the pull of the clause." May 7, 2019 Opinion and Order (Dkt. No. 278) at 15.  Significantly, the Court reached this ruling at a time when BASF was pursuing both co-inventorship and co-ownership claims under the MTEA.  At trial, however, BASF dropped its co-inventorship claim, limiting its MTEA-based contentions to a breach-of-contract claim.  Trial Tr. at 1173:13–1174:1; 1478:16–19; 1812:7–11; 1814:2–10. BASF's MTEA claim in its final form plainly does not implicate the same public interests as before BASF dropped its co-inventorship claim.  In particular, while the United States may arguably have a substantial interest in resolving BASF's co-inventorship claim because that claim turned on whether CSIRO rightfully obtained its patents under U.S. patent law,[6] BASF's abandonment of co-inventorship tilts the interests definitively in the opposite direction because the remaining breach claim concerns a contract that was formed in Australia, is governed by Australian law, was performed in Australia and Germany (but not the United States), is between Australian and German entities, and does not require application of U.S. law.  The Australian courts therefore have the predominant if not exclusive interest in adjudicating such a claim.

The Court also cited the potential duplication of party and court efforts as a factor counseling against enforcement of the forum selection clause.  May 7, 2019 Opinion and Order (Dkt. No. 278) at 14–15.  However, enforcing the clause would not result in significant re-litigation, since the only claim at issue is BASF's breach-of-contract claim.  Much if not all of the necessary discovery relating to this claim has already been completed.  Indeed, it is evident from the trial that BASF's breach claim turns primarily if not exclusively on interpretation of the

---

[6] The Court drew an analogy between BASF's MTEA claim and bankruptcy cases, which similarly involve application of U.S. laws and involve comparable public interests.  May 7, 2019 Opinion and Order (Dkt. No. 278) at 14.

provisions of the contract within the four corners of that agreement, and analysis of the '792 Patent and its underlying patent applications.  An Australian court could therefore resolve the remaining breach-of-contract claim expediently.  Importantly, the applicability of the statute of limitations on BASF's claim—on which this Court has never articulated a ruling and which the Court did not submit to the jury—has not been decided on its merits and, thus, would not involve any duplication of efforts or waste of resources.  In short, because BASF no longer claims co-inventorship under the MTEA, the public interest reasons the Court cited in support of its denial of CSIRO's motion no longer apply.

Lastly, the breach-of-contract claim should also have been dismissed under a traditional *forum non conveniens* analysis.  As an initial matter, BASF has already litigated the majority of its claims and defenses in the United States.  Thus, finding that the ACT courts are the appropriate forum for the limited purpose of adjudicating BASF's breach-of-contract claim would not significantly impact Proponents' choice of forum.  Indeed, since the parties explicitly chose an ACT forum, litigation of the claims in Australia is the only approach that would carry out the parties' expressed intentions.  In addition, as discussed above, litigating BASF's MTEA claim in Australia would not involve commitment of significant additional resources or effort, since the parties have already completed discovery and since the claims at issue primarily concern the contractual text and the content of the patent.  Finally, as explained above, the United States does not have a strong interest in adjudicating BASF's breach-of-contract claim, which concerns a contract formed in Australia and governed by Australian law and applied to Australian and German parties.  The only reason that this case is pending in a federal court in Virginia is the happenstance that a *different* BASF entity (one that is not a contracting party) elected to bring declaratory judgment patent claims concerning *different* patents than the '792 Patent in this forum.  Thus, even

15

under the traditional framework, the doctrine of *forum non conveniens* applies here in view of BASF's decision to narrow its MTEA claim to a breach-of-contract claim.

Accordingly, for the reasons set forth above, Proponents respectfully request that the Court enter judgment that BASF's claim based upon an alleged breach of the MTEA should be resolved in Australia, based upon the doctrine of *forum non conveniens*, and set aside the jury's verdict that BASF is a co-owner of the '792 Patent.

### C. A New Jury Trial on Willful Infringement is Required.

The Court erred by ruling *sua sponte* that there was no triable issue on the question of willfulness. *See generally Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1250 (Fed. Cir. 1989) (refusal to submit willfulness question to jury was de facto JMOL), *abrogated in part on other grounds by Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148–49 (Fed. Cir. 2011).  In adjudicating willfulness as a matter of law, the Court stated that "the existence of the MTEA" and "the events that followed it," including that BASF "brought the litigation . . . when [it and CSIRO] couldn't cooperate" under the MTEA, barred any willfulness finding because such evidence reflected a "good-faith belief" by BASF that it "owned the patents[-in-suit]."  Trial Tr. at 1926:12–1928:11; *see also id.* at 1650:9–18.  The Court erred in so holding.

First, it was for the jury as the finder of fact and not the Court to weigh the evidence and make the ultimate determination regarding willfulness.  Willfulness is a quintessential fact question for the jury to decide.  *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp.*, 879 F.3d 1332, 1353 (Fed. Cir. 2018) ("[T]he entire willfulness determination is to be decided by the jury.");  *Richardson*, 868 F.2d at 1250 ("Willfulness of behavior is a classical jury question of intent.  When trial is had to a jury, the issue should be decided by the jury." (internal citations omitted)).  In other words, "willfulness is an issue for the jury, not the district court."  *Id.*; *see also*

*Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006).  Although the Court is the ultimate decision maker with regard to granting enhanced damages or attorneys' fees based upon a jury verdict of willfulness, Proponents nevertheless had a "right to a jury trial on the willfulness question." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 n.13 (Fed. Cir. 2016); *see also Richardson*, 868 F.2d at 1250 (remanding case for trial on willfulness when district court declined to provide an instruction on the issue); Trial Tr. at 1927:19–21.  It was the jury's exclusive role to evaluate the credibility of BASF's witnesses and decide whether BASF in fact had "a good-faith belief" that it owned the patents-in-suit.  *See, e.g., i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010) ("jury was free to decide for itself whether [the accused infringer] reasonably believed there were any substantial defenses to a claim of infringement" (citation omitted)), *aff'd*, 564 U.S. 91 (2011).

Second, the jury certainly could have reasonably concluded that BASF's litigation-driven, breach-of-contract contentions under the MTEA did not furnish a good-faith basis for the infringement.  *Cf.* Trial Tr. at 1927:24–1928:9 (Court's ruling that "I think the existence of the MTEA pretty much sinks any conceivable argument in support of willful infringement.").  The MTEA was terminated on February 28, 2010.  *See* Trial Tr. 819:2–8; *see also* Chan Decl., Ex. 1 (JX-52 (MTEA) at CSI00106413).  BASF never raised its breach-of-contract theory under the MTEA with CSIRO *until January 2019*—almost nine years after the termination of the agreement and more than a year after it commenced this litigation.  *See, e.g.*, Trial Tr. at 1033:1–1037:14, 1072:6–1073:23, 1215:1–1216:22, 1219:11–1220:14; *see also* Andy Beadle Deposition Designations at 52:5–8, 52:17–53:4, 53:6–8, 60:2–4, 60:10–16, 60:19–22, 61:3, 62:22–63:10, 94:17–20, 94:22–95:5, 95:7–9, 95:12–18, 95:21–96:3, 135:21–136:5, 136:8–14, 136:17–137:1, 137:4–11, 137:14–20, 138:5–139:3, 139:9–11, 142:8–11, 142:14–16.  Moreover, as a matter of

law, "[p]roof of an objectively reasonable litigation-inspired defense to infringement is no longer a defense to willful infringement." *WBIP,* 829 F.3d at 1341. Thus, notwithstanding the MTEA, the jury should have been permitted to decide whether Opponents have willfully infringed the patents-in-suit.[7] *See, e.g.*, *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1244 (Fed. Cir. 2017) ("[T]he Supreme Court issued *Halo Electronics*, which rejected the requirement of 'finding objective recklessness in every case before district courts may award enhanced damages.' Now, 'the subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless.'" (alteration and ellipses omitted) (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016))).

Third, when all of the evidence adduced at trial is viewed in the light most favorable to Proponents and all reasonable inferences are drawn in their favor, there was more than enough evidence to have the jury decide willfulness. *See, e.g.*, *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1193 (Fed. Cir. 1996) ("All of the circumstances must be considered in determination of the issue of willful infringement."); *Richardson*, 868 F.2d at 1250 (remanding for trial on willfulness where "there was sufficient evidence to take [it] to the jury, for the evidence [did] not require a verdict in favor of [the accused infringer]"). "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Halo Elecs.*, 136 S. Ct. at 1933. A finding of

---

[7]  At a minimum, the MTEA, which was in effect no earlier than March 1, 2008, was irrelevant to willful infringement of the Group A patents. Chan Decl., Ex. 1 (JX-52 (MTEA) at CSI00106411). The Group A patents all undisputedly are based on a 2005 patent application. Opponents could not have possibly believed in good faith that BASF owned the Group A patents when those patents claim inventions disclosed in a specification and application that pre-dates the MTEA. Thus, notwithstanding the MTEA, at least a new trial on willfulness as to the Group A patents is necessary.

willfulness is appropriate where the accused infringer knew or should have known that "its actions constituted an unjustifiably high risk of infringement of . . . valid and enforceable patent[s]." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (quotation marks and citation omitted), *cert. denied*, 139 S. Ct. 143 (2018).

Here, the evidence demonstrated that: (1) Opponents closely followed the publication and issuance of Proponents' patent applications and patents; (2) BASF investigated the infringement and validity of Proponents' patents as required by the freedom-to-operate provision of the BASF/Cargill partnership agreement (Chan Decl., Ex. 6 (JX-65)); (3) BASF knew about the Group A inventions and the Group A patent applications at least by 2008.  Examples of this evidence include the following testimony and documentary evidence:

- Dr. Carl Andre (on behalf of BASF) testified that he personally maintains a spreadsheet that tracks all of CSIRO's patent applications and that he reads CSIRO's patents whenever they issue.  Trial Tr. at 1034:7–1035:1; 1035:24–1036:2.

- Dr. Andre testified that BASF is notified within a week to a month whenever any CSIRO patent is published and that BASF performed an analysis of U.S. patents for Cargill as part of its obligations to Cargill under the BASF/Cargill partnership agreement.  *Id.* at 1032:6–1033:8; *id.* at 1034:7–1035:1 ("Q. In fact, you said you get all the patents from CSIRO in this area within a week to a month, you personally do, correct?  A. From all competitors, not just CSIRO, but including CSIRO, yes."); *id.* at 998:17–19 ("When was BASF aware of CSIRO's patents?  A.  We monitor things, and we're usually aware within a week or a month after they publish.").

- Dr. Willie Loh (on behalf of Cargill) testified that Cargill was aware of the asserted patents before the lawsuit was filed because Cargill became aware of them after they were published.  *Id.* at 1459:9–14.

- Mark Christiansen (on behalf of Cargill) testified that Cargill filed a notice of indemnification against BASF approximately one year ago, which is after the asserted patents issued and that the indemnification notice was triggered by BASF's failure to secure freedom to operate for Cargill, which meant that Cargill knew it would be infringing the asserted patents.  *Id.* at 1138:2–6.

- BASF became aware of the Group A inventions in 2005, as is reflected by BASF internal meeting minutes from the time.  *See* Trial Tr. at 1208:20–1213:22; Chan Decl., Ex.7 (CX-0267 (April 12–14, 2005 Meeting Minutes) at BASF00053407).

19

- The Materials Transfer and Evaluation Agreement explicitly lists CSIRO's PCT/AU2005/000571 application, which is the basis for the Group A Patents. Chan Decl., Ex. 1 (JX-52 (MTEA) at CSI00106423); *see also* Trial Tr. at 1615:14–1617:23.

- Through the direct examination of Mr. Christiansen, Opponents discussed an October 12, 2016 letter from Nuseed to Cargill that listed the '250 Patent, which is in the same family as the '880 Patent, '357 Patent, '033 Patent, and '579 Patent. Chan Decl., Ex. 8 (PX-530 (October 12, 2016 letter)); Trial Tr. at 883:21–884:2, 1119:13–1121:4.

- When BASF filed its complaint in this case, it was aware of the '250 Patent. Dkt. No. 1. Opponents referenced that complaint during trial. Trial Tr. at 884:19–25.

- By no later than August 2018, after Proponents filed their counterclaims, Opponents had knowledge of the patents-in-suit. *See* CSIRO's Answer to BASF's Amended Complaint and CSIRO's, GRDC's, and Nuseed's Counterclaims Against BASF and Cargill (Dkt. No. 56).

Despite their contemporaneous knowledge of the patents-in-suit and their underlying applications, Opponents have neither ceased nor curtailed any of their infringing conduct. *See, e.g.*, Chan Decl., Ex. 9 (CX-1884 (Amended Stipulation of Infringement, Dkt. No. 692)). Indeed, Opponents have steadfastly engaged in, and continue to engage in, all infringing activities that are necessary to bring the accused products containing Elite Event LBFLFK to market as soon as possible. *See, e.g.*, Chan Decl., Ex. 10 (JX-61 (BASF Deregulation Petition)); Chan Decl., Ex. 11 (JX-59 (The First Amendment to the BASF-Cargill Commercialization Agreement)); Chan Decl., Ex. 12 (PX-274 (Presentation entitled: "Pre-submission Consultation with USDA")); Trial Tr. at 974:13–974:18, 983:4–985:23, 1008:17–25, 1125:7–1126:11, 1139:25–1142:11, 1143:15–1144:4, 1300:14–22, 1303:17–1305:10.

Under similar circumstances, courts have repeatedly found that such evidence is sufficient to sustain a finding of willful infringement. *See, e.g.*, *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 811 (Fed. Cir. 2007) (affirming willfulness judgment where, *inter alia*, "Stryker continued to push towards a United States market entry, filing its FDA application months before it received

Augustin's revised legal advice"); *Nat'l Presto Indus.*, 76 F.3d at 1193 ("The court referred to West Bend's evidence relating to its assessment of the patentability of the Presto device before Presto's patent was issued, observed that the jury could have disbelieved certain of this testimony, and mentioned the evidence of West Bend's copying of Presto's design.  The court also referred to West Bend's continuation of infringing sales after suit was filed.  All of the circumstances must be considered in determination of the issue of willful infringement." (citations omitted)).  Although in this case it is clear that BASF and Cargill had knowledge both of Proponents' issued patents and of their underlying applications, courts have concluded that knowledge of applications alone is sufficient to support a finding of willfulness.  *See also WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 971 (Fed. Cir. 2018) (unpublished disposition) (affirming willfulness finding where "Mr. Humber, IPS's employee, testified that he had monitored WCM's products for decades and possessed catalogs and other literature indicating that WCM's products were marked with 'patent pending.'"); *Smartflash LLC v. Apple Inc.*, No. 6:13CV447-JRG-KNM, 2015 WL 661276, at *1 (E.D. Tex. Feb. 13, 2015) ("knowledge of a patent application is probative evidence of whether Defendants knew or should have known about the likelihood of infringement and may be supplemented by other disputed facts that could support a finding of willfulness by a jury."); *Dentsply Sirona, Inc. v. Edge Endo, LLC*, No. 17-CV-1041-WJ/SCY, 2019 WL 1517584, at *4 (D.N.M. Apr. 8, 2019) *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 609–10 (D. Mass. 2018); *Tomita Techs. USA, LLC v. Nintendo Co.*, No. 11-CIV-4256-JSR, 2012 WL 2524770, at *10 (S.D.N.Y. June 26, 2012); *Viskase Corp. v. Am. Nat. Can Co.*, 979 F. Supp. 697, 705–06 (N.D. Ill. 1997).

Fourth, the evidence does not support the conclusion that the MTEA coupled with BASF's course of conduct leading up to the litigation concerning the patents-in-suit negated any possibility

of willfulness. Trial Tr. at 1926:12–1928:11; *see also id.* at 1650:9–18. Again, between the expiration of the MTEA and January 2019, BASF had ample opportunity to confront CSIRO about a breach of the MTEA, but never did. *See, e.g.*, *id.* at 1033:1–1037:14, 1072:6–1073:23, 1215:1–1216:22, 1219:11–1220:14; *see also* Andy Beadle Deposition Designations at 52:5–8, 52:17–53:4, 53:6–8, 60:2–4, 60:10–16, 60:19–22, 61:3, 62:22–63:10, 94:17–20, 94:22–95:5, 95:7–9, 95:12–18, 95:21–96:3, 135:21–136:5, 136:8–14, 136:17–137:1, 137:4–11, 137:14–20, 138:5–139:3, 139:9–11, 142:8–11, 142:14–16. That is because nobody at BASF had any good-faith belief that CSIRO and BASF created any Joint New Results—as that term is defined in the MTEA—let alone that any Joint New Results were claimed by CSIRO in any of the patents-in-suit. *See id.* at 1033:1–1037:14, 1072:6–1073:23, 1215:1–1216:22, 1219:11–1220:14, 1230:4–1231:7, 1231:14–16, 1241:5–11, 1249:10–1251:24, 1262:10–19, 1263:9–19 , 1264:1–1265:7, 1424:12–1425:20; *see also* Chan Decl., Ex. 13 (CX-0349 (July 2015 Email Chain); Chan Decl., Ex. 14 (CX-1287 (September 2016 Email Chain)); Chan Decl., Ex. 15 (PX-263 (September 2006 Meeting Notes)). Additionally, there is no evidentiary support for the finding that BASF brought this litigation because BASF and CSIRO "couldn't cooperate" under the MTEA. Trial Tr. at 1928:4–5. The alleged jurisdictional basis for BASF's declaratory judgment action was a breakdown in the parties' business and licensing negotiations between September 2016 and April 2017—not a failure to cooperate under the MTEA. *See* Complaint (Dkt. No. 1) ¶¶ 22–32.

In sum, a new trial on willfulness (at least as to the Group A patents) is needed because the Court erred by: (1) usurping the jury's fact-finding role as to willfulness; (2) relying upon BASF's litigation-driven, breach-of-contract defense under the MTEA; (3) not considering the evidence in the light most favorable to Proponents and drawing inferences in their favor; and (4) making findings that were not supported by the evidentiary record.

**D.  A New Jury Trial on a Reasonable Royalty for Past Infringement is Required.**

It was also legal error to preclude the introduction of evidence concerning a reasonable royalty for past infringement and ultimately to dismiss the jury during the remedies phase, notwithstanding Proponents' proffer reflecting sufficient evidence of a reasonable royalty.

The Court reasoned that the jury did not need to decide the issue of a reasonable royalty as to past infringement because: (1) neither Proponents nor Opponents have made any sales yet of any product that are embodiments of the asserted claims of the patents-in-suit; (2) Proponents' damages expert, Mr. John Jarosz, did not apportion a royalty rate among the Group A patents; and (3) Mr. Jarosz's range for a reasonable royalty—12% to 49%—was too large.  *See* Trial Tr. at 1821:22–1827:11, 2238:19–2255:11.  None of these reasons justified the Court's discharge of the jury as to a reasonable royalty and past damages.

As an initial matter, Proponents were statutorily entitled to no less than a reasonable royalty as soon as the jury found infringement.[8]  The Federal Circuit "made clear in *Dow Chemical Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003), 35 U.S.C. § 284 requires the district court to award damages 'in an amount no less than a reasonable royalty' even if the [plaintiff] has no evidence to proffer."  *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1371–72 (Fed. Cir. 2015) (citations omitted); *see also Dow Chem.*, 341 F.3d at 1381–82 ("The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty. . . .  The district court's conclusion that no damages could be awarded, in light of the presumption of damages when infringement is proven, was in error." (citations omitted)); *Lindemann*

---

[8]  To be clear, if the Court were to grant JMOL in favor of Proponents on other patents such that infringement becomes relevant (e.g., no invalidity and/or no co-ownership), then a new trial on willfulness is also required for those patents.  All arguments herein apply with equal force to those patents.

*Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1406 (Fed. Cir. 1990) ("In patent law, the fact of infringement establishes the fact of damage because the patentee's right to exclude has been violated."). Even where a patent holder presents "flawed" evidence of a reasonable royalty or no evidence at all, the patent holder is still entitled to have the jury decide a reasonable royalty. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1329–30 (Fed. Cir. 2014), overruled in part on other grounds by *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ("the district court's conclusion that Apple's HTC-based estimate was flawed does not establish, as a matter of law, a zero royalty . . . . Even if Apple had not submitted expert evidence, this alone would not support a finding that zero is a reasonable royalty.").

Proponents' entitlement to a jury verdict on past damages included an entitlement to have the jury enter a verdict concerning a reasonable royalty. *See, e.g.*, *Apple*, 757 F.3d at 1315 ("This court has recognized that questions regarding which facts are most relevant or reliable to calculating a reasonable royalty are 'for the jury.'" (citation omitted)); *i4i Ltd. P'ship*, 598 F.3d at 856 ("Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury. The jury was entitled to hear the expert testimony and decide for itself what to accept or reject." (citation omitted)).

Here, before the jury was discharged, Proponents proffered that Mr. Jarosz would explain that the relevant royalty rate would be calculated by applying a royalty rate derived from CSIRO's executed license to the patents-in-suit to the royalty base consisting of the amount of infringing oil that Opponents have produced to date and the market price for that oil. Trial Tr. at 2247:15–22; *see also* Proponents' Trial Brief Regarding the Presentation of Past Damages Evidence to the Jury (Dkt. No. 769) at 2 (discussing use of prevailing fish oil price as a basis for calculation of the royalty base); Counterclaimants' Opposition to BASF and Cargill's *Daubert* Motion to Exclude

Portions of the Testimony of Dr. Ljerka Kunst and Mr. John Jarosz (Dkt. No. 531) at 20–21 (similar). The royalty rate was based upon Proponents' own license—the only patent license that covers the Group A patents—as well as the parties' documents regarding projected sales and profits of their respective embodiments of the asserted claims.  Trial Tr. at 2247:15–2248:13; *see also* Counterclaimants' Opposition to BASF and Cargill's *Daubert* Motion to Exclude Portions of the Testimony of Dr. Ljerka Kunst and Mr. John Jarosz (Dkt. No. 531) at 18–19.  When all of the evidence is viewed in the light most favorable to Proponents, there was more than enough from which the jury could have calculated a reasonable royalty rate for past damages.

The Court also erred prior to the jury's dismissal by preventing Proponents from introducing evidence concerning a reasonable royalty for past damages that was based upon Proponents' licensing agreement and *not* based upon Proponents' actual economic loss (i.e., lost profits).  Section 284 is clear that the patent holder is entitled to "no less than" a reasonable royalty. *E.g.*, *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1329–30 (Fed. Cir. 2015) ("The two 'alternative categories of infringement compensation' under section 284 are 'the patentee's lost profits and the reasonable royalty he would have received through arms-length bargaining.'" (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009))).  Actual economic loss is not a prerequisite for recovery of damages in a patent suit.  *See id.* ("The reasonable royalty theory of damages . . . seeks to compensate the patentee not for lost sales caused by the infringement, but for its lost opportunity to obtain a reasonable royalty that the infringer would have been willing to pay if it had been barred from infringing.").  Indeed, *Georgia-Pacific* Factor 1 provides that the rates paid to the patentee for a license to the patent-in-suit is primary evidence of a reasonable royalty.  That is precisely what Proponents sought to do here: demonstrate a reasonable royalty rate by introducing evidence of the rate provided in a license to the patents-

25

in-suit.  However, the Court imposed a requirement that evidence of past damages must be derived from calculations of economic loss.   *Compare, e.g.*, Trial Tr. at 2241:21–2242:4 (Court: "[Y]ou have to start with how much it cost to produce the oil and how much went into research. . . . How much did it cost you to research it, how many plants does it take to produce a given amount of oil, how much does it cost, how much do you have to pay the farmers to do that.") *and id.* at 2243:1–5 ("[T]hat's what they've done in the past.  They've spent money raising them.  That's the number that we ought to have, how much it cost them to raise the product, how much oil was produced for what costs in the past."), *with Apple*, 757 F.3d at 1315 ("[T]here may be more than one reliable method for estimating a reasonable royalty. . . .  All approaches have certain strengths and weaknesses and, depending upon the facts, one or all may produce admissible testimony in a single case.  It is common for parties to choose different, reliable approaches in a single case and, when they do, the relative strengths and weaknesses may be exposed at trial or attacked during cross-examination.  That one approach may better account for one aspect of a royalty estimation does not make other approaches inadmissible. . . .  The fact that one of these methods may be said to more accurately value this aspect of a reasonable royalty calculation does not, necessarily, make the other approach inadmissible.") *and i4i Ltd. P'ship*, 598 F.3d at 856.

It was up to the jury to decide what the appropriate royalty rate was in the range of royalties proffered by Mr. Jarosz and/or based upon evidence introduced by Opponents.  *See, e.g.*, *Hogg v. Emerson*, 52 U.S. 587, 608, (1850) ("The further general suggestion by the judge, to give only the actual damages, was well calculated to prevent any thing vindictive or in excess, and justified the jury to go still lower than they did, if appearing just to them, and as has sometimes been done in this class of cases.  That, however, was a matter of discretion for the jury, under all the circumstances, and not a question of law for the court." (citation omitted)); *Micro Chem., Inc. v.*

*Lextron, Inc.*, 317 F.3d 1387, 1394 (Fed. Cir. 2003) ("The amount of damages based on a reasonable royalty is an issue of fact." (citation omitted)).  Thus, in light of the Court's de facto award of a zero percent royalty rate for infringement of valid patents, and despite the statutory presumption of damages once infringement is found under § 284, a new trial on past damages is warranted.  *See Apple*, 757 F.3d at 1328 n.7 ("We note that we know of no case where we found that the record supported an infringement award of a zero royalty." (citations omitted)).

The Court's other reasons for barring the jury from deciding past damages and a reasonable royalty also were premised upon legal error.  First, that no commercial embodiments have been sold by any party does not prevent the calculation of a reasonable royalty.  *See Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1290 (Fed. Cir. 2011) (error and abuse of discretion by district court to not determine reasonable royalty for accused products that were manufactured but not sold); *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1350 (Fed. Cir. 2000) ("[T]he only cognizable infringement in this case is the testing and those tests were not shown to cause any loss of profits to Embrex . . . .  However, under 35 U.S.C. § 284, Embrex 'in no event' loses entitlement to a reasonable royalty for SEC's infringing tests.  Royalties are ordinarily computed based upon the sales of a patented product or process.  However, parties may choose other methods to compute the amount that a licensee may pay for the right to use a patented product or process, such as flat fees or milestone payments in the case of pre-commercialization licenses."); *see also Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012) ("The court also erroneously stated that a reasonable royalty is an improper measure of damages because Transocean presented no evidence of actual harm or that it lost an opportunity to sell or use its patented invention due to losing the Statoil contract to Maersk.").

27

Second, precedent does not require an apportionment of damages among the Group A patents. Where, as here, each of the Group A patents covers all of the accused products entirely, no apportionment is necessary. *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1562 n.8 (Fed. Cir. 1983) ("Since the parties treated the mechanical and process patents as a unitary licensing property, we need not consider damages for infringement of each patent individually."); *see also Chrimar Holding Co., LLC v. ALE USA Inc.*, 732 F. App'x 876, 886–87 (Fed. Cir. 2018) (unpublished disposition) (a new trial on damages was not required because all of the asserted patents covered the same accused product and the same smallest saleable patent-practicing units); *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 426 F. Supp. 2d 211, 225 (D. Del. 2006) ("The court finds that a reasonable jury could agree with Davis' testimony concerning why her estimation of royalty rates for the five look-ahead patents was the same as that for the single '436 patent. Whether one patent or five is necessary for a product, an infringer cannot sell its product without a license."), *aff'd*, 493 F.3d 1358 (Fed. Cir. 2007); Counterclaimants' Opposition to BASF and Cargill's *Daubert* Motion to Exclude Portions of the Testimony of Dr. Ljerka Kunst and Mr. John Jarosz (Dkt. No. 531) at 13–15.

Third, it is not improper for Mr. Jarosz to proffer testimony about a range of reasonable royalties for the jury to consider in calculating a reasonable royalty rate. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) ("This court has recognized that estimating a reasonable royalty is not an exact science. The record may support a range of reasonable royalties, rather than a single value."); *Apple*, 757 F.3d at 1315 (same); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1241 (Fed. Cir. 2011). Because the Court did not exclude Mr. Jarosz's royalty opinions, it was for the jury to weigh those opinions and determine a reasonable royalty on that basis. *Cf. Apple*, 757 F.3d 1286 at 1328 ("[S]imply because a patentee fails to show

that its royalty estimate is correct does not, by itself, justify awarding a royalty of zero at summary judgment, as the district court did here." (citation omitted)); *i4i Ltd. P'ship*, 598 F.3d at 856.

Proponents' request that a jury be permitted to rule on a reasonable royalty rate is critical not only to a determination of past damages but, more importantly, to the determination of an ongoing royalty. The jury's determination on a reasonable royalty would set a floor in this case for an ongoing royalty rate, and therefore the jury's verdict should have been considered by the Court before ruling on prospective relief. In *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1296–98 (Fed. Cir. 2018), the Federal Circuit held that a district court abused its discretion by adopting an ongoing royalty rate that was lower than the royalty rate adopted by the jury. The Court agreed that doing so would put the patentee in a worse position than if it were to "forgo[] the [judge's] 12.5% ongoing royalty and [sue the infringer] repeatedly for future infringement at the jury's 15% reasonable royalty rate." *Id.* at 1298. Here, this Court ruled that the royalty rate for post-verdict infringement would be higher than the pre-verdict rate, *see* Trial Tr. at 2630:12–25, and therefore the jury's royalty rate would have set the floor for the ongoing royalty, *see XY*, 890 F.3d at 1297 ("[T]here is a 'fundamental difference' between 'a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement.' For example, when calculating an ongoing royalty rate, the district court should consider the 'change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability.' When patent claims are held to be not invalid and infringed, this amounts to a 'substantial shift in the bargaining position of the parties.' (quoting *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360, 1362 (Fed. Cir. 2008); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1342 (Fed. Cir. 2012))); *see also Artic Cat*, 876 F.3d at 1379. As such, the Court should not only order a new jury trial on the question of past damages and a reasonable royalty,

but also should thereafter reconsider its ongoing royalty ruling in light of the jury's verdict.[9]

## IV.    CONCLUSION

For the foregoing reasons, the Court should enter judgment as a matter of law or grant a new trial as to the MTEA claim, and grant a new trial as to willfulness and royalties on past infringement.

DATED: December 2, 2019                     Respectfully submitted,

                                            */s/ Richard Ottinger*
                                            Richard Ottinger (Virginia Bar #38842)
                                            rottinger@vanblacklaw.com
                                            Vandeventer Black LLP
                                            101 West Main Street
                                            500 World Trade Center
                                            Norfolk, VA 23510
                                            Telephone:  (757) 446-8600
                                            Facsimile:  (757) 446-8670

                                            Michael Ng (Admitted *Pro Hac Vice*)
                                            michael.ng@kobrekim.com
                                            Daniel Zaheer (Admitted *Pro Hac Vice*)
                                            daniel.zaheer@kobrekim.com
                                            Michael M. Rosen (Admitted *Pro Hac Vice*)
                                            michael.rosen@kobrekim.com
                                            Hartley M.K. West (Admitted *Pro Hac Vice*)
                                            hartley.west@kobrekim.com
                                            Kobre & Kim LLP
                                            150 California Street, 19th Floor
                                            San Francisco, California 94111
                                            Telephone:  (415) 582-4800
                                            Facsimile:  (415) 582-4811

                                            Rebecca G. Mangold (Admitted *Pro Hac Vice*)
                                            rebecca.mangold@kobrekim.com
                                            Jonathan E. Barbee (Admitted *Pro Hac Vice*)
                                            jonathan.barbee@kobrekim.com
                                            Alexa Pearlman (Admitted *Pro Hac Vice*)
                                            alexa.pearlman@kobrekim.com
                                            George Stamatopolous (Admitted *Pro Hac Vice*)

---

[9]  Out of an abundance of caution, Proponents seek the same relief under Rule 59(d) and (e), i.e., vacate the judgment of a zero percent royalty rate and have a new trial on past damages.

george.stamatopolous@kobrekim.com
Kobre & Kim LLP
800 3rd Ave
New York, NY 10022
Telephone:  (212) 488-1200
Facsimile:  (212) 488-1220

Kimberly P. Cole (Admitted *Pro Hac Vice*)
kimberly.cole@kobrekim.com
Hugham Chan (Admitted *Pro Hac Vice*)
hugham.chan@kobrekim.com
Kobre & Kim LLP
1919 M Street, NW
Washington, DC 20036
Telephone:  (202) 664-1900
Facsimile:  (202) 664-1920

Matthew I. Menchel (Admitted *Pro Hac Vice*)
matthew.menchel@kobrekim.com
Laura M. Gonzalez (Admitted *Pro Hac Vice*)
laura.gonzalez@kobrekim.com
Kobre & Kim LLP
201 South Biscayne Boulevard
Suite 1900
Miami, FL 33131
Telephone:  (305) 967-6100
Facsimile:  (305) 967-6120

*Attorneys for Counterclaimant Commonwealth
Scientific and Industrial Research Organisation*

Miranda Jones (Admitted *Pro Hac Vice*)
mirandajones@porterhedges.com
Andrew B. Raber (Admitted *Pro Hac Vice*)
araber@porterhedges.com
Megan Mon-Ting Luh (Admitted *Pro Hac Vice*)
mluh@porterhedges.com
Jonna N. Summers (Admitted *Pro Hac Vice*)
jsummers@porterhedges.com
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, TX 77002
Telephone:  (713) 226-6000
Facsimile:  (713) 226-1331

*Attorneys for Counterclaimant Grains Research and Development Corporation*

Lawrence M. Sung (Admitted *Pro Hac Vice*)
lsung@wileyrein.com
Teresa Summers (Admitted *Pro Hac Vice*)
tsummers@wileyrein.com
Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006
Telephone:  (202) 719-7000
Facsimile:  (202) 719-7049

*Attorney for Counterclaimant Nuseed Pty. Ltd.*

**<u>Certificate of Service</u>**

I hereby certify that on December 2, 2019 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Richard Ottinger* _____
Richard Ottinger
Virginia Bar Number: 38842
rottinger@vanblacklaw.com
Vandeventer Black LLP
101 West Main Street
500 World Trade Center
Norfolk, VA 23510
Telephone: (757) 446-8600
Facsimile: (757) 446-8670

*Counsel for Defendant and Counterclaimants*